[No. 16615.   Department Two.   November 5, 1921.]

THE STATE OF WASHINGTON, *on the Relation of Silver
Lake Railway & Lumber Company, Plaintiff,* v.
THE PUBLIC SERVICE COMMISSION *et al., De-
fendants and Respondents,* DIRECTOR OF
PUBLIC WORKS *et al., Substituted
Defendants and Respondents.*[1]

CARRIERS (2)—WHO ARE COMMON CARRIERS—RAILROADS—POWERS
OF PUBLIC SERVICE COMMISSION.   The status of a carrier as a com-
mon carrier is a question of fact to be determined by the courts
upon the evidence presented in the record, irrespective of the find-
ing of the public service commission.

SAME (2)—EFFECT OF CHARTER PROVISIONS.   Power conferred on
a corporation by its charter to perform service as a common carrier
will not establish its character as a common carrier, where it has
never undertaken to exercise that power.

SAME (2) — EVIDENCE — SUFFICIENCY.   The fact that a logging
corporation brought an action to condemn land for a railroad right
of way, while evidence to be considered, would not be sufficient in
itself to establish a status as common carrier contrary to the actual
facts.

SAME (2).   A logging and railway company organized for the
purpose of getting out timber owned by the stockholders has no
other status than that of a private carrier, where it does not carry
on a general freight business but occasionally transports articles
for others at less than the cost of service.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered May 2, 1921,
affirming on certiorari an order of the public service
commission declaring the relator to be a common
carrier, etc., after a hearing before the court.   Re-
versed.

*Miller, Wilkinson & Miller,* for relator.

*The Attorney General, Raymond W. Clifford, Assist-
ant (Benjamin M. Lavine, Hastings & Stedman,* and
*Donald G. Graham,* of counsel), for respondents.

[1]Reported in 201 Pac. 765; 203 Pac. 3.

Hovey, J.—This is an appeal from a judgment of the superior court of Thurston county affirming an order of the public service commission declaring the relator, Silver Lake Railway & Lumber Company, a common carrier and directing it to "operate its line of railway by transporting freight upon such schedules and upon such days as may be approved by the commission."

There is little conflict in the testimony and the facts are substantially as follows: The relator was incorporated under the laws of this state in the year 1903 as a railway company. Its charter contains the broad powers of a common carrier railway company. The corporation was formed, and the railway built, for the purpose of conveying a large amount of logs owned by the incorporators from the woods to the Cowlitz river, where the logs are dumped. This terminal point is about one mile from Castle Rock, and the railway as now constructed runs about six or seven miles further to Silver lake, which is in the midst of the timbered area owned by the incorporators of the railroad. The road was built purely as a logging railroad. It has a maximum grade in excess of four per cent and includes curves as great as twenty-nine degrees. Its equipment consists solely of logging trucks and one forty ton locomotive for the hauling of the same. It has no stations, has never published any tariffs, and has never sought business from others, nor held itself out as desiring the same. The country is sparsely settled, and while there is a wagon road following the general line of the railway, it is at times difficult of passage, and the railway company has carried a small amount of merchandise for other persons for which service it has at times made a charge, and at other times has rendered the service without charge. The charge made has never been under any fixed schedule, and has never been compen-

satory nor sufficient in amount to have justified the rendition of the service if that were the sole purpose of the railway. The operation of the railway has been entirely dependent upon the requirements of the railway company, and when the market for its logs was inactive it has not been operated. At one time the railway was not operated for a period of eighteen months, and it had not been operated for some weeks at the time the hearing was had.

It was found by the commission that the relator operated as a common carrier for a number of years after its incorporation and held itself out to the public as a common carrier. In our opinion, this finding is not justified by the testimony in this case, and the character of its operation does not seem to have differed during that period from that of later years.

In the year 1908, the relator brought an action seeking to condemn certain land which it required for its right of way, and in its petition alleged facts showing it to be a common carrier and as such entitled to the right of eminent domain. This action was never prosecuted to judgment, but the relator paid to the owners of the land the full price which they demanded for the same and secured their title in that manner.

The service heretofore rendered by the relator to other persons consisted chiefly of transportation of merchandise needed by a store operated near Silver lake, the customers of which were principally the employees of the railroad. For a short time it transported shingles for one of its stockholders, and at other times has carried isolated shipments of machinery, and in one month transported a large amount of gravel for the county commissioners for the purpose of repairing a highway. It has never transported logs for other persons.

The respondent Tenino Lumber Company has acquired options on some thirty million feet of timber and desires to have the relator compelled to carry out its logs.

At the outset the question is raised as to the power of the commission to declare a corporation a common carrier if that fact is disputed, and we are asked to pass upon the effect of such an order.

In most of the cases heretofore decided by this court the corporations involved have been confessedly public service corporations, and we have held that the orders of the commission relative to them are presumed to be within the bounds of reasonableness, and unless the contrary clearly appears, the same will stand. *State ex rel. Great Northern R. Co. v. Railroad Commission,* 60 Wash. 218, 110 Pac. 1075.

In our opinion, the question of the character of the corporation is one of fact and must be determined by the courts upon the evidence presented in the record. In the case of *Cushing v. White,* 101 Wash. 172, 172 Pac. 229, L. R. A. 1918 F 463, the question of the character of the corporation was determined by the court upon the evidence, and the effect to be given to the finding of the commission was not discussed. In *Associated Pipe Line Co. v. Railroad Commission of California,* 176 Cal. 518, 169 Pac. 62, L. R. A. 1918 C 849, the supreme court of California, in answering the contention that the declaration of the legislature of the character of a carrier would make it a common carrier irrespective of the facts, says:

"Indeed, such legislation, if attempted, would have been futile, since under the Fourteenth Amendment of the Federal constitution no state shall deprive any person of property without due process of law, and to take or devote private property to public use without compensation is such deprivation."

In *Producers' Transportation Co. v. Railroad Commission of California,* 251 U. S. 228, 40 Sup. Ct. Rep. 132, the supreme court of the United States said:

"It is, of course, true that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts and never was devoted by its owner to public use, that is, to carrying for the public, the state could not, by mere legislative fiat or by any regulating order of a commission, convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment."

A long line of cases are cited in support of this statement.

We come now to the question of the effect to be given to the declarations of the charter. Respondents cite § 211 of Wyman on Public Service Corporations, in which general language is used to the effect that a corporation is bound by the recitals in its charter. We have examined all the cases cited in the note to this section and none of them meet the present situation. Where a corporation enters upon a line of conduct prescribed by its charter it is held to full performance, but there are doubtless many corporations operating under charters containing an enumeration of powers which they have never sought to exercise. In our opinion, while these declarations are the justification for the acts that the corporation afterwards does and are binding upon the corporation for any line of action which it undertakes in accordance therewith, they are not in themselves the sole criterion by which the position of the corporation may be judged. What really fixes the status of the corporation is what it does, rather than what it says. "The answer to that ques-

tion does not depend upon whether its charter declares it to be a common carrier, nor upon whether the state of incorporation considers it such; but upon what it does." *United States v. Brooklyn Eastern District Terminal*, 249 U. S. 296, 39 Sup. Ct. Rep. 283, and cases cited. See, also, *Bridal Veil Lumbering Company v. Johnson*, 30 Ore. 205, 46 Pac. 790, 60 Am. St. 818, 34 L. R. A. 368; *Apex Transportation Co. v. Garbade*, 32 Ore. 582, 52 Pac. 573, 62 L. R. A. 513.

This court in *State ex rel. Harris v. Superior Court*, 42 Wash. 660, 85 Pac. 666, 7 Ann. Cas. 748, 5 L. R. A. (N. S.) 672, has recognized this principle.

"The courts are not confined to, and it is not to be tested exclusively by, the description of those objects' and purposes as set forth in the articles of association, but evidence *aliunde*, showing the actual business proposed to be conducted, may be considered."

The fact that the relator brought an action seeking to condemn land for a right of way and the statements made in its petition therefor are like the statements in its articles of incorporation, evidence to be considered in considering its status, but are not, in our opinion, sufficient in themselves to establish a status which was in truth contrary to the facts.

The facts as shown in the record, in our opinion, conclusively establish that this corporation never advanced beyond the status of a private carrier. In *Cushing v. White, supra,* Judge Webster has set out the text of a great many authorities upon this subject and it seems hardly necessary to restate them here, and we will confine ourselves to the discussion of some of the authorities which we consider pertinent to this particular case. The undisputed evidence is to the effect that the relator was organized for the purpose of getting out timber owned by the persons organizing it and

that is the only business which it has ever followed as a business. Its transportation of articles for others where it made no charge would, of course, not change the status, and the fact that it did make charges in other instances which were in every instance less than the cost of the service rendered might be considered as bringing these acts within the gratuitous class, and as defined in 1 Moore on Carriers, p. 2, would constitute the railroad a private carrier so far as these acts are concerned.

The finding of the commission is that the logs transported by the railroad for itself, if charged for at customary rates, will equal in value $45,000 per annum, while the total sums realized from the charges made other persons did not average more than about $175 per year, and while the size of the business is not in itself sufficient to absolve the carrier of its position of common carrier, yet the fact that the business has been so conducted for so many years along this line is persuasive evidence that the relator neither intended to be, nor held itself out to be, a common carrier. The evidence is clear that the road is not now equipped for the carrying on of a general freight business. Its logging trucks when loaded aggregate about eighty thousand pounds in weight, while the loaded standard railway car is about double this weight. Its track is laid with rails which in no instance are more than forty pounds. Its grades and curves are excessive for those of ordinary railway business. When it operates, its entire equipment is now utilized in its own business, and to require it to undertake the transportation which is tendered in this case would require clear evidence of its legal obligation so to do, and, in our opinion, this is not supplied by the record in this case.

The judgment of the superior court of Thurston

county is reversed and the order of the public service commission heretofore made set aside.

Relator will recover costs.

PARKER, C. J., MAIN, HOLCOMB, and MACKINTOSH, JJ., concur.

## ON REHEARING.

[Department Two.    December 30, 1921.]

PER CURIAM.—A petition for rehearing has been filed in this cause.

It is said in the opinion that the average freight receipts received from outside sources by the relator were about $175 per annum, and the petition for rehearing refers to the portion of the testimony where the president of the relator stated that that was the income for the year 1920 as being the only testimony on this point. Preceding this testimony is that of the same witness concerning total receipts for the year 1919 of considerable less than this sum, and on page sixty-five of the statement of facts the witness was asked whether they had hauled any freight previous to that time, and he answered that they had for some five or six years, "about the same amount of freight each year I presume." We think it cannot be questioned that the amount collected for freight from outside persons is inconsequential in the total, and the exact sums collected do not become especially material.

The petition is practically a restatement of the contentions made upon the former hearing, and we see no occasion to depart from the decision heretofore rendered. The petition is therefore denied.