HUMBIRD LUMBER COMPANY, a Corporation, Appellant,
v. PUBLIC UTILITIES COMMISSION and SAND-
POINT WATER & LIGHT COMPANY, a Corpora-
tion, Respondents.

[228 Pac. 271.]

PUBLIC UTILITY—WHAT CONSTITUTES—DEDICATION TO PUBLIC SERVICE
—PUBLIC UTILITIES COMMISSION—JURISDICTION OF.

1. If a concern is not a public utility, it is not subject to the
jurisdiction of and regulation of the Public Utilities Commission.

2. For a water company to be a public utility and within the
jurisdiction of the Public Utilities Commission, it must be oper-
ating and delivering water to the public for compensation.

3. The delivery of water to one person or corporation, under
contract for compensation, does not constitute a sale of water to
the public or some portion thereof within the provisions of C. S.,
sec. 2396, so as to constitute the vendor a public utility.

4. Whether a concern has held itself out as ready, able and
willing to serve the public is the test for determining if it is a
public utility.

5. A lumber manufacturing company, by pumping water from
a lake to the water system of a railway company for compensa-
tion, does not thereby become a public utility when the lumber
company's water system was constructed for the primary purpose
of furnishing water for its manufacturing needs and fire protec-
tion and it has never furnished or offered to furnish water to
any other person or corporation.

APPEAL from the District Court of the Eighth Judicial
District, for Bonner County. Hon. John M. Flynn, Judge.

Judgment quashing writ of review and affirming order of
the Public Utilities Commission. *Reversed.*

E. W. Wheelan and James E. Babb, for Appellant.

A lumber company operating as a necessary part of its
manufacturing operations a water system, necessary for use
and used in such operations, does not become a water cor-
poration, or the operator of a water system or a public

utility under the provisions of chapter 61, Laws of 1913, simply 'because it furnishes from its waterworks water to Northern Pacific Railway Company, a near neighbor of its manufacturing plants, it not having solicited any other customers and serving no other customers with water, and having no intention so to do. (*Thayer v. California Development Co.,* 164 Cal. 117, 128 Pac. 21; *De Pauw University v. Public Service Com.,* 247 Fed. 183; *Nampa & Meridian Irr. Dist. v. Briggs,* 27 Ida. 84, .147 Pac. 75; *Bartee Tie Co. v. Jackson,* 281 Ill. 452, 117 N. E. 1007; *People v. Ricketts,* 248 Ill. 428, 94 N. E. 71; *State Public Utility Com. v. Bethany Mutual Telephone Assn.,* 270 Ill. 183, Ann. Cas. 1917B, 485, 110 N. E. 334; *Leavitt v. Lassen I. Co.,* 157 Cal. 82, 106 Pac. 404; *Burr v. Maclay Rancho Water Co.,* 160 Cal. 268, 116 Pac. 715; *Marin Water & Power Co. v. Town of Sausalito,* 168 Cal. 587, 143 Pac. 767; *Palermo Land & Water Co. v. Railroad Com.,* 173 Cal. 380, 160 Pac. 228; *Cauker v. Meyer,* 147 Wis. 320, 133 N. W. 157, 37 L. R. A., N. S., 510; *Wisconsin Traction, Light, Heat & Power Co. v. City of Menasha,* 15 Wis. 1, 145 N. W. 231; 1 Wyman on Public Service Corp., secs. 200, 231–242; 3 Kinney on Irrigation and Water Rights, p. 2659; *Noble Telephone Co. v. Noble Mutual Tel. Co.,* 268 Ill. 411, Ann. Cas. 1916D, 897; 109 N. E. 298; *Evansville etc. Co. v. Okaw etc. Co.,* P. U. R. 1917D, 730; Purdy's Beach on Private Corporations, sec. 1032; *Fallsburg Power Co., etc., v. Alexander,* 101 Va. 98, 99 Am. St. 855, 43 S. E. 194, 61 L. R. A. 129; *Avery v. Vermont Electric Co.,* 75 Vt. 235, 98 Am. St. 818, 54 Atl. 179, 59 L. R. A. 817; *State ex rel. Danciger & Co. v. Public Service Commission of Missouri,* 275 Mo. 483, 18 A. L. R. 754, 205 S. W. 36; *Stoehr v. Natatorium Co.,* 34 Ida. 217, 200 Pac. 132; *Fellows v. Los Angeles,* 151 Cal. 52, 90 Pac. 137.)

Paragraph (bb) of section 2, chapter 61, Laws of 1913, defines public utility as those who serve "the public or some portion thereof," which expression was previously used and illustrated and defined in *Hildreth v. Montecito Creek Water Co.,* 139 Cal. 22, 72 Pac. 395, following *McQuillin v.*

*Hatton,* 42 Ohio St. 202; Lewis on Eminent Domain, p. 161;
*Coster v. Tidewater Co.,* 18 N. J. Eq. 68; *Pocantico v. Bird,*
130 N. Y. 249, 29 N. E. 246; *Gilmer v. Line Point,* 18 Cal.
229.

"Some" means not one, but a small or inconsiderable
number as defined in instruction approved. (*St. Louis
Paper Box Co. v. Hubinger Bros. Co.,* 100 Fed. 595, 40
C. C. A. 577; *Hum v. Olmstead,* 105 N. Y. Supp. 1091;
*Washington Water Power Co. v. Montana Power Co.,* Case
No. F-68, P. U. R. 1916E, 144; *Mountain States Tel. & Tel.
Co. v. Project Mutual Tel. & Electric Co.,* P. U. R. 1916F,
370; *Fulton, Light, Heat & Power Co. v. Granby etc. Co.,*
P. U. R. 1917A, 76; *McFadden v. County of Los Angeles,*
74 Cal. 571, 16 Pac. 397; *Barton v. Riverside Water Co.,*
155 Cal. 509, 101 Pac. 790, 23 L. R. A., N. S., 331.)

A corporation engaged in a private business and with
authority only to carry on such business, having equipment
or supplies used in carrying on the same, may accumu-
late a sufficient surplus to enable them to supply water
to one or more other industries in need thereof, as an in-
cident of its private business, and as a means of reimburs-
ing itself for the expenses of securing the supply or equip-
ment needed in its own business, and in so doing does not
violate a franchise granting another the monopoly of dealing
therein as a public utility, or otherwise. (*State ex rel. Public
Service Com. v. Spokane & I. E. R. Co.,* 89 Wash. 599, 154
Pac. 1110; *United States v. Chandler-Dunbar Water Power
Co.,* 229 U. S. 51, 33 Sup. Ct. 667, 57 L. ed. 1063; *Johnson
City v. Weeks,* 133 Tenn. 277, 3 A. L. R. 1431, 180 S. W.
327; *Chattanooga etc. Power Co. v. United States,* 209 Fed.
28, 126 C. C. A. 170; *Mayo v. Dover & Foxcraft Village
Fire Co.,* 96 Me. 539, 53 Atl. 62; *Edwards v. City of Chey-
enne,* 19 N. Y. 285, 114 Pac. 677, 122 Pac. 900; *Roberts v.
City of Cambridge,* 164 Mass. 176, 41 N. E. 230; *Pikes Peak
Power Co. v. City of Colorado Springs,* 105 Fed. 1, 44 C. C. A.
333; *Crouch v. City of McKinney,* 47 Tex. Civ. 54, 104
S. W. 518.)

In judging the extent of a reasonable equipment and supply with which plaintiff was authorized to equip itself for the purpose of its private business, it was not limited to absolute necessity, and could acquire, in excess of present needs, in anticipation of increased demands in the future, and is allowed a large discretion, which will not be interfered with except in case of abuse. (Lewis on Eminent Domain, sec. 453; *Marsh Mining Co. v. Inland M. & M. Co.,* 30 Ida. 1, 165 Pac. 1128.)

The fact that the single individual or enterprise supplied with water by the private enterprise may be a large user of water or otherwise is not determinative in ascertaining whether the supply of the same constitutes public service. (*Bartee Tie Co. v. Jackson,* 281 Ill. 452, 117 N. E. 1107, citing *People v. Ricketts,* 248 Ill. 428, 94 N. E. 71.)

Herman H. Taylor, Roy L. Black, Attorney General, and A. H. Conner, succeeding Attorney General, for Respondents, file no brief.

WM. E. LEE, J.—The material facts in this case are that the Humbird Lumber Company is the owner of extensive lumber plants at Sandpoint and Kootenai; years ago it constructed and installed at each of these plants complete water systems for use in its operations and for fire protection. Water-tanks have been erected at each plant from which water is forced through the systems. At each place it has installed a steam pump of one thousand gallons capacity per minute and an electric pump of five hundred and fifty gallons capacity per minute. These plants have been erected upon the lands of the lumber company outside of the corporate limits of Sandpoint and Kootenai, and are adjacent to Lake Pend D'Oreille, from which the water is pumped. At both Sandpoint and Kootenai, and adjoining the respective plants of the lumber company the Northern Pacific Railway Company, on its own lands, has depots, roundhouses, cattle-pens, offices, section-houses, etc.; and it has a complete water system at each place through which water is furnished from standpipes or tanks for the trains

and engines of the railway company and for its various other uses. The Sandpoint Water & Light Company's system formerly connected with the water systems of the lumber and railway companies, but prior to the commencement of this proceeding, the lumber and railway companies discontinued the water company's service. The lumber company connected its water systems with the water systems of the railway company, and has since supplied the railway company with water.

The water company is a public utility, and sought by the proceeding instituted before the Public Utilities Commission to secure an order of the commission directing the lumber company to refrain from furnishing water to the railway company. The commission found that the lumber company was functioning as a public utility; that it had not secured a certificate of public convenience and necessity; and made and issued order No. 475, requiring the lumber company to cease and desist from furnishing water to the railway company. A writ of review was issued out of the district court of Bonner county to review the proceeding, and this appeal is from the judgment of the district court, in effect, sustaining the commission. The proceeding on review was commenced before the enactment of chap. 72, Laws of 1921. The lumber company has filed in this court a very elaborate brief in which it has assigned and discussed a number of alleged errors, most of which it will not be necessary to discuss. Neither the commission nor the water company has appeared in this court and we are not favored with the views of the water company with respect to the questions necessary to be determined.

The question with which the Utilities Commission was confronted, and which we are to determine, is whether the furnishing of water to the railway company constituted such a public use as to bring the lumber company within the definition of a public utility.

It is stipulated that:

"During all of the time that said water has been so furnished by the Lumber Company to the Railway Company,

the said Railway Company has been and now is a close neighbor of the Lumber Company and the Lumber Company has at no time supplied or furnished any other person, company or corporation with water to be used for any other purpose at or in the vicinity of Sandpoint (Kootenai) and never has offered to supply or furnish any other person, firm or corporation with water to be used for any other purpose and does not intend to engage in the utility business or has not offered to and does not intend to offer to engage in such business in any manner whatsoever.''

''The term 'water corporation' . . . . includes every corporation . . . . owning, controlling, operating or managing any water system for compensation. . . . . '' (C. S., sec. 2392.) ''The term 'public utility' . . . . includes every . . . . water corporation . . . . : Provided, That the term 'public utility' as used in this chapter shall cover cases both where the service is performed and the commodity delivered directly to the public *or some portion thereof* . . . . '' (C. S., sec. 2396.) The jurisdiction of the commission is restricted to the supervision and regulation of public utilities. (C. S., sec. 2450.)

The evidence does not justify the conclusion that the lumber company is ''operating'' its water system ''for compensation.'' The lumber company constructed its water system as a part of its lumber manufacturing plant before the water company came into existence, and it is conclusive that the water system of the lumber company was operated in connection with and as a small but necessary incident of its general plant. It is a matter of common knowledge that the fire risk of sawmills and lumber manufacturing plants is great, and the fact that the lumber company constructed its water system primarily for fire protection and general mill use is conclusively established. The fact that it has fifty-three hydrants scattered throughout one of its plants and yards is strongly indicative of the purpose of the water system. The capacity of its pumps is greater than is necessary to supply water for manufacturing purposes, but the evidence does not disclose and we cannot say that capacity

of the pumps is greater than is required for fire purposes. And the fact that the lumber company receives compensation for the water supplied the railway company is merely an incident, and is not sufficient to justify a finding that the water system of the lumber company is operated for compensation. There is ample justification for the conclusion that the water system of the lumber company is not operated primarily for compensation.

Reading and construing C. S., sec. 2392, sec. 2396 and sec. 2450, together, the legislature has said that a water company to be a public utility, and within the jurisdiction of the commission, must be operating and delivering water to the public or some portion thereof for compensation. The evidence does not show that the lumber company is delivering water to the public or some portion thereof for compensation. It is stipulated that the lumber company has never furnished or offered to furnish water to any person or corporation other than the railway company and that it has not offered and does not intend to engage in the utility business. The furnishing of water to one person or corporation, under a contract, does not constitute a delivery of water to the public or some portion thereof. (*Hildreth v. Montecito Creek Water Co.*, 139 Cal. 22, 72 Pac. 395; *McQuillen v. Hatton,* 42 Ohio St. 202; *Pocantico v. Bird,* 130 N. Y. 249, 29 N. E. 246; *Mountain States Telephone & Telegraph Co. v. Project Mutual Telephone & Electric Co.*, P. U. R. 1916F, 370; *Washington Water Power Co. v. Montana Power Co.*, P. U. R. 1916E, 144; *McFadden v. Board of Supervisors of Los Angeles County,* 74 Cal. 571, 16 Pac. 397; *Barton v. Riverside Water Co.*, 155 Cal. 509, 101 Pac. 790, 23 L. R. A., N. S., 331; *Cauker v. Meyer,* 147 Wis. 320, 133 N. W. 157, 37 L. R. A., N. S., 510; *Stratton v. Railroad Com.,* 186 Cal. 119, 198 Pac. 1051; *Richardson v. Railroad Com.,* 191 Cal. 716, 218 Pac. 418; *Klatt v. Railroad Com.,* 192 Cal. 689, 221 Pac. 926.)

It was said by this court in *Stoehr v. Natatorium Co.,* 34 Ida. 217, 200 Pac. 132, that: "To hold that a water corporation is a public utility, because it receives compensation for

water owned by it and furnished to a limited number of the inhabitants of Boise, within a limited area, would be an unreasonable interpretation of the foregoing statutes . . . . '' (C. S., secs. 2392, 2396; *Allen v. Railroad Com.,* 179 Cal. 68, 8 A. L. R. 249–260, 175 Pac. 466.)

"A corporation becomes a public service corporation, and therefore subject to regulation as a public utility, only when and to the extent that the business of such corporation becomes devoted to a public use." (*Stoehr v. Natatorium Co., supra; Thayer v. California Development Co.,* 164 Cal. 117, 128 Pac. 21.)

"To hold that property has been dedicated to a public use is 'not a trivial thing' (*San Francisco v. Grote,* 120 Cal. 60, 65 Am. St. 155, 52 Pac. 127, 41 L. R. A. 335), and such dedication is never presumed 'without evidence of unequivocal intention' (*Niles v. Los Angeles,* 125 Cal. 572, 58 Pac. 190.)'' (*Stoehr v. Natatorium Co., supra; Public Utilities Com. v. Natatorium Co.,* 36 Ida. 287, 211 Pac. 533.)

In *Stoehr v. Natatorium Co., supra,* the company had been furnishing water to certain customers for many years and was then furnishing approximately 276 users, through several miles of pipe laid in the streets of the city. (See *Public Utilities Com. v. Natatorium Co., supra.*) But for the reasons therein set forth, among which was that the company had never offered the water for sale to the public in general nor intended to dedicate it to a public use, this court held that the Natatorium Company was not a public utility, and not within the jurisdiction of the commission. It would seem that the decision in *Stoehr v. Natatorium Co.* is authority for the decision of the question here presented. And it cannot be said that the holding of this court in the subsequent case of *Public Utilities Com. v. Natatorium Co., supra,* that the waters of the same Natatorium Company were not the public waters of the state would affect *Stoehr v. Natatorium Co.,* as authority in this case, because waters originally appropriated for private use may be dedicated to the use of the public. (Const., sec. 1, art. 15.)

The test for determining whether the lumber company is a public utility would seem to depend upon whether it has held itself out as ready, able and willing to serve the public generally, or some portion thereof.  The stipulation hereinbefore quoted and the evidence show conclusively that it has never done more than serve the railway company, one concern, under a private contract; and that it has never devoted its business, either wholly or partly, to the use of the public. We conclude that the lumber company was not a public utility and was not within the jurisdiction of the utilities commission.  Because of this fact, the commission exceeded its jurisdiction in making order No. 475.  (*Public Utilities Com. v. Natatorium Co., supra* (concurring opinion of McCarthy, J.); *Van Hoosear v. Railroad Com.*, 184 Cal. 553, 194 Pac. 1003; *Thayer v. California Development Co., supra; State ex rel. Danciger v. Public Service Com.*, 275 Mo. 483, 18 A. L. R. 754, 205 S. W. 36; *DePauw University v. Public Service Com. of Oregon*, 247 Fed. 183; *Pinney v. Los Angeles*, 168 Cal. 12, Ann. Cas. 1915D, 471, 141 Pac. 620, L. R. A. 1915C, 282; *Associated etc. Co. v. Railroad Com.*, 176 Cal. 518, 169 Pac. 62, L. R. A. 1918C, 849; *Allen v. Railroad Com., supra.*)

Another point of attack by appellant is that the legislature has not attempted to vest in the commission the power to make and issue the order complained of, and that it was made without any authority of law whatever.  Appellant contends that the legislature could not vest such power in the commission, and cites *Dewey v. Schreiber Implement Co.,* 12 Ida. 280, 85 Pac. 921.

The Utilities Commission cannot exercise a judicial power. The judicial power of this state is vested in the courts, and the legislature cannot vest judicial power in the public Utilities Commission.  (*Neil v. Public Utilities Com.*, 32 Ida. 44, 178 Pac. 271.)

It was held in *Neil v. Public Utilities Com., supra,* that the commission did not have the power to order a ferry owner to "furnish such facilities and perform such services as may be requisite and necessary to meet all just and rea-

sonable demands.'' If the commission does not possess the power to require something to be done, it certainly does not possess the power to require that a thing be not done. If it cannot issue a *mandamus* order, it cannot issue an injunctive order.

By the order, the lumber company' was "required to cease and desist from the furnishing of water to the Northern Pacific Railway Company . . . . until it shall have secured . . . . a. certificate of public convenience and necessity . . . . '' While it is not labeled an injunction, and is not in the language usually employed in a restraining order, it is nothing more nor less than a restraining order, an injunction. The power to issue a restraining order is judicial in character, and can only be exercised by the supreme court and the district courts. (*Neil v. Public Utilities Com., supra.*)

The ultimate fact sought to be established in this proceeding was that the lumber company was a public utility. The complaint before the commission alleged that ''the said lumber company is now operating as a public utility, and exercising the rights and privileges thereof. . . . . '' The lumber company, according to the commission's recitation, ''denied . . . . that it has at any time or now is exercising the rights or privileges of a public utility. . . . . '' The commission found that the lumber company was operating as a public utility and directed it to ''cease and desist from the furnishing of water . . . . or in any way operating as a public utility. . . . . '' The commission has power to supervise and regulate public utilities (C. S., sec. 2450); and it may without doubt, while acting within the scope of its jurisdiction, exercise judicial functions in determining the question before it, but the law does not authorize the commission to exercise a judicial power or make a judicial order. That power is possessed by the courts and cannot be vested anywhere else. The legislature has not and could not vest such a power in the commission. The order is void. (*Dewey v. Schreiber Implement Co., supra; Neil v. Public Utilities Com., supra; Mt. Konocti etc. Co. v. Thelen,* 170

Cal. 468, 150 Pac. 359; *Holabird v. Railroad Com.*, 171 Cal. 691, 154 Pac. 831.)

It follows, therefore, that the judgment of the district court quashing writ of review and affirming the order of the Public Utilities Commission in this case must be reversed, and it is so ordered.

McCarthy, C. J., and Budge and William A. Lee, JJ., and Johnson, District Judge, concur.