STATE ex rel. PUBLIC UTILITIES COMMISSION OF UTAH v. NELSON (NEILSON, Intervener).

No. 4207.   Decided June 20, 1925.   (238 P. 237.)

1. CARRIERS—STATE MAY NOT, BY MERE LEGISLATIVE FIAT THROUGH ORDERS OF COMMISSION, CONVERT PRIVATE CONTRACTS OF PRIVATE BUSINESS INTO PUBLIC UTILITY, OR MAKE ITS OWNER A COMMON CARRIER. State may not, by mere legislative fiat, through orders of commission, convert private contracts of private business into public utility, or make its owner a common carrier.

2. CARRIERS—DEFENDANT OPERATING AUTOMOBILE OMNIBUS FOR CAMP ASSOCIATION, WHICH PAID HIM CERTAIN DAILY WAGE TO TRANSPORT ITS GUESTS, HELD NOT "COMMON CARRIER" OR "PUBLIC CARRIER." Defendant, who operated an automobile omnibus pursuant to contract with a camping association, in which he transported exclusively guests or prospective guests of the association, and their baggage, for agreed daily wage, held not a common carrier or public carrier operating a public utility required to obtain permit from Public Utilities Commission, under Comp. Laws 1917, § 4782, subds. 6, 13, 14, 28, sections 4798, 4818; a "common carrier" or "public carrier" being one who, by virtue of his business or calling or holding out, undertakes for compensation to transport persons or property or both from one place to another for all such as may choose to employ

him, public service being a necessary feature.[1]

3. CARRIERS—CERTIFICATE OF CONVENIENCE AND NECESSITY HELD NOT TO GIVE RIGHT TO EXCLUSIVE USE OF HIGHWAY. Certificate of convenience and necessity for automobile stage line, granted by Public Utilities Commission pursuant to Comp. Laws 1917, § 4782, subds. 6, 13, 14, 28, and sections 4798, 4818, does not give person receiving it right to exclusive use of highway passing through a canyon, or to exclude from the canyon those not patronizing him.

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea*, Judge.

Suit by the State, on the relation of the Public Utilities Commission, to restrain C. W. Nelson from conducting a stage line operated by him on a public highway, in which James Neilson intervened. From an adverse judgment, the Commission and intervener appeal.

AFFIRMED.

*Harvey H. Cluff*, Atty. Gen., for appellant Utilities Commission.

*Young, Boyle & Moyle*, of Salt Lake City, for appellant Neilson.

*Fabian & Clendenin*, of Salt Lake City, for respondent.

STRAUP, J.

James Neilson, the intervener, was granted a certificate of convenience and necessity by the Public Utilities Commission of Utah authorizing him to operate an automobile stage line

---

[1] Distinguishing *Public Utilities Commission* v. *Garviloch*, 54 Utah, 406, 181 P. 272; *Utah Copper Co.* v. *Public Utilities Comm.*, 59 Utah, 191, 203 P. 627; *Utah Hotel Co.* v. *Public Utilities Comm.*, 59 Utah, 389, 204 P. 511.

Headnote 1.   10 C. J. p. 38 (Anno.).
Headnote 2.   10 C. J. pp. 37, 649.
Headnote 3.   10 C. J. p. 649.

carrying passengers and freight between Salt Lake City and Brighton, Utah. Brighton is a summer resort in the mountains at the head of Big Cottonwood Canyon about 30 miles easterly of Salt Lake City. About one-half of the designated route of the intervener was along and over the canyon road, the only accessible means by automobile or other conveyance to Brighton or intermediate points in the canyon. The intervener maintained two terminal stations, one at Salt Lake City, the other at Brighton, and five or six stations between those points. He operated a stage line on schedule and at fixed charges approved by the commission. He claimed to have been equipped to take care of all the transportation and traffic between Salt Lake City and Brighton and intermediate points, and that there was no necessity for any other public utility operating an auto stage line between such points. His route was along and over the public highway. The highway in the canyon is traversable by automobile only in the summer months or open seasons. Between Brighton, the head of the canyon, and the mouth of the canyon are a number of other summer resorts. About five miles west of Brighton, down the canyon, is what is called the "Community Camp." It is conducted and maintained by the Utah Out-Door Association, a corporation organized under the laws of Utah for only eleemosynary purposes, with its object to provide at minimum expense an outing camp for persons not otherwise able to obtain camping facilities and conveniences. The association had a special permit from the government to operate the camp on the National Forest Reserve. The supervisor of the reserve was one of the directors of the association, and was in immediate charge of the camp. Persons desiring to attend the camp were required to make arrangements to do so through the office of the National Forest Reserve. To meet in part the expense of maintaining the camp, including tents, stoves, beds, tables, etc., the association made a charge of $11 for four persons for one week and $14 for two weeks, which charge included transportation to and from the camp. In 1923 the association accommodated at the camp about 900 persons. It ap-

plied to the commission for a permit to operate a stage line to carry its guests to and from the camp. The commission denied the application. Then, to accommodate its guests and persons attending the camp, the association entered into a contract with the defendant, C. W. Nelson, by the terms of which he during the months of July and August, for a consideration of $20 a day, undertook and agreed to operate an automobile omnibus, equipped with pneumatic tires, cushion seats, and suitable covering and having a capacity to carry at one time at least 15 adult passengers, between Salt Lake City and the camp, making two trips a day. He further agreed to maintain at Salt Lake City a suitable depot for passengers and baggage. Each passenger, free of charge, was entitled to baggage not to exceed 50 pounds. A charge of 1 cent a pound was made in excess of 50 pounds, and 1 cent a pound for all freight unaccompanied by passenger tickets. All such charges and collections were turned over to the association. In pursuance of such contract the defendant operated such "bus" or stage line over and along the highway in the canyon, the only accessible pass to and from the camp. With a few exceptions the defendant transported no persons except those who were guests and entitled to privileges of the camp, and all persons transported by him were required to produce or procure tickets from the association entitling them to such transportation. The defendant had no certificate or permit from the commission, nor did he apply for any.

The Commission, as plaintiff, brought this action to restrain the defendant from conducting the stage line so operated by him. The intervener joined therein. The court found the facts as hereinbefore indicated, and held that the defendant operating the stage line under contract with the association in carrying guests entitled to privileges of the camp was not a common carrier nor engaged in operating a public utility, and hence it was lawful for him to carry on such operations without a permit or certificate from the commission, but restrained him from carrying passengers for compensation, who were not guests or intending to become

guests of the camp, without a permit or certificate from the commission.

The commission and intervener appeal. It is contended by them that under subdivisions 6, 13, 14, and 28 of section 4782 and of sections 4798 and 4818, Comp. Laws Utah 1917, the defendant was a common carrier, and as such operating a public utility within the meaning of the Public Utilities Act, and that to lawfully carry on such operations he was required to have a certificate from the commission; and, inasmuch as it was conclusively shown he had no such certificate, it is urged the court erred in refusing to restrain the operations carried on by the defendant, even as to the transportation of guests entitled to privileges of the camp. To support such contention the appellants cite the following cases: *Public Utilities Commission* v. *Garviloch,* 54 Utah, 406, 181 P. 272; *Terminal Taxicab Co.* v. *District of Columbia,* 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765; *Utah Copper Co.* v. *Public Utilities Comm.,* 59 Utah, 191, 203 P. 627; *Haddad* v. *State,* 23 Ariz. 105, 201 P. 847; *Utah Hotel Co.* v. *Public Utilities Comm.,* 59 Utah, 389, 204 P. 511; *Vandalia R. R. Co.* v. *Stevens,* 67 Ind. App. 238, 114 N. E. 1001; *State* v. *Union Stock Yards Co.,* 81 Neb. 67, 115 N. W. 627. In such connection cases also are cited to the effect that a common carrier cannot, by special contract, change his status as such; among them the case of *Campbell* v. *A. B. C. Storage Van Co.,* 187 Mo. App. 565, 174 S. W. 140. Other cases are also cited on the question who is and who is not a common or private carrier. The principles of law announced in the cited cases are readily admitted. However, we think they are not applicable to the case in hand. They do not on similar facts and circumstances show that one situated or conditioned as was the defendant is a common carrier. They all recognize that a common or public carrier is one who, by virtue of his business or calling or holding out, undertakes for compensation to transport persons or property, or both, from one place to another for all such as may choose to employ him. Running through the cases is a recognition of the dominant ele-

ment of public service, serving and carrying all persons indifferently who apply for passage or for shipment of goods or freight. To constitute a common carrier such element is also requisite under the Utilities Act. It defines a "common carrier," as the term is used therein, to include among others every automobile corporation engaged in the transportation of persons or property for public service over regular routes between points within the state and an automobile corporation to include every corporation or person engaged in or transacting business of transporting passengers or freight, merchandise, or other property, for compensation by means of automobiles or automobile stages on public streets, roads, or highways along established routes within the state. Public service, as distinguished from mere private service, is thus a necessary factor to constitute a common carrier. Such element, in portions of the act, is not as clearly expressed as might be. Nevertheless, it necessarily is implied. It is only by the presence of such factor or element that the commission has power or authority to regulate or control such business. Eliminating it, its power and jurisdiction are gone. No one may successfully contend that it is competent for the Legislature to regulate and control in such respect a mere private business or to declare a private business to be public service or a public utility. In other words, the state may not, by mere legislative fiat or edict or by regulating orders of a commission, convert mere private contracts or a mere private business into a public utility or make its owner a common carrier. *Producers' Transp. Co.* v. *Railroad Comm.*, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239; *Associated Pipe Line Co.* v. *Railroad Comm.*, 176 Cal. 518, 169 P. 62, L. R. A. 1918C, 849; *Allen* v. *Railroad Comm.*, 179 Cal. 68 175 P. 466, 8 A. L. R. 249; *State* v. *Public Service Comm.*, 117 Wash. 453, 201 P. 765, 203 P. 3. So, if the business or concern is not public service, where the public has not a legal right to the use of it, where the business or operation is not open to an indefinite public, it is not subject to the jurisdiction or regulation of the commission. *Humbird Lum-*

*ber Co.* v. *Public Utilities Comm.*, 39 Idaho, 505, 228 P. 271; *Story* v. *Richardson,* 186 Cal. 162, 198 P. 1057, 18 A. L. R. 750. Where the act constituting a common-carrier or public service does not clearly express such element of public use or service, words "for public use or service" or their equivalent nevertheless are to be understood and implied. *State* v. *Public Service Comm.*, 275 Mo. 483, 205 S. W. 36, 18 A. L. R. 754. That too, is apparent when looking at the whole act and considering its scope and purpose. So, considering the act, we are of opinion that the defendant was not a common carrier nor engaged in the business of a public utility.

Before entering into his contract with the association to transport its guests, etc., the defendant was not engaged in any such or, so far as made to appear, in any other similar business. The case thus does not fall within the claimed situation where one, in fact being a common carrier, may not by special contract change his status as such. It was in virtue of the contract made by him with the association, and not otherwise, that he engaged in the business or employment. Hence the question reduces itself to the proposition of whether it was competent for the association, without a permit or certificate from the commission, to transport its own guests and their baggage and its supplies to and from the camp. If so, it was competent for it to do through agency what it itself could lawfully do. The court found, and the evidence shows, that with but one or two exceptions the defendant transported no one who was not a guest or intended to become a guest of the camp and no baggage or property except of the guests or of the association. That was all with respect to transportation that the defendant's contract called for, and that was all that he did. That, the court held he had a right to do without a permit or certificate from the commission. For such service the defendant was paid, not by the guests transported by him, but by the association, $20 a day, regardless of whether the guests transported by him were few or many. The transportation was not the main or principal object or business.

State v. Nelson. 65 Utah 457

It was but an incident or secondary to another, the community camp and its maintenance. If under such circumstance neither the association nor the defendant under his contract with it, without a permit or certificate from the commission, could lawfully so transport guests and supplies of the association to and from the camp, then could not a mining company operating a mine up or near the canyon transport its employés and freight and supplies to and from its mine, nor legally make a contract with another to do so, without a permit or certificate from the commission? The statute, as we think, does not forbid the one any more than the other.

It, however, is said that the defendant transported the guests, etc., along the established route of the intervener. What of it? The certificate granted the intervener did not give him the right to an exclusive use of the highway or to exclude all others from the canyon who do not patronize him. When a certificate of convenience and necessity to use a public highway is granted by the commission, it is to be hoped the general public still has left some rights in and to the use of the highway, especially in a canyon where the highway is the only passage. Such certificates are to protect and safeguard public interests, and not to oppress or restrain them nor to monopolize the use of the highway.

It is clear the defendant did not hold himself out to carry, nor was he engaged in carrying, any and all persons who desired to travel up and down the canyon or go from place to place, or property of all persons indifferently. No one except guests of the camp or connected with it and holding a ticket from the association had a right to demand of the defendant transportation either of person or property. We therefore think the court was right in holding that the defendant was not a common carrier nor operating a public utility. The judgment of the court below is therefore affirmed, with costs to respondent.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.