(No. 5154. May 7, 1928.)

AMBROSE W. CODD and JOHN V. ALLEN, a Copartnership Doing Business Under the Firm Name and Style of CODD & ALLEN LUMBER COMPANY, Petitioners and Plaintiffs, v. McGOLDRICK LUMBER COMPANY, a Corporation, Defendant.

[267 Pac. 439.]

N. D. Wernette, for Plaintiffs.

258

Robert H. Elder and Randall & Danskin, for Defendant.

GIVENS, J.—Petitioners and plaintiffs seek a writ of mandate compelling defendant company to operate its logging railroad as a common carrier of lumber, logs and lumber products, the only service in issue. The essential question is whether defendant is a common carrier or public utility. Hence, while the matter in the affidavit or petition referred to in subds. (a) and (d), p. 2, of defendant's motion to strike as irrelevant, is perhaps not essential to the cause of action stated, it has some relevancy to the representations as to its future operations alleged to have been made by the defendant before and during construction. Therefore the motion to strike will be denied.

The question raised by defendant's demurrer is whether the petitioner sufficiently charges that defendant is a common carrier or public utility, which question the courts in the last analysis have sole jurisdiction to decide and which, therefore, may be in the first instance decided by the courts, though the utilities commission may, and at times must, in the orderly discharge of its functions consider and decide.

Questions of service and rates are not involved in this action and therefore the authorities referred to by the defendant, holding that such matters, by the passage of the public utilities act, were taken from the purview of the courts, are not in point. The question here is the determination of defendant's legal status, and not its regulation. *Baltimore & Ohio R. R. v. United States*, 215 U. S. 481, 30 Sup. Ct. 164, 54 L. ed. 292, and similar cases denying *mandamus* are concerned with service and rate matters and are not in point. The legal status of defendant is a question of fact to be determined by the courts. (*State v. Atlantic Coast Line R. R.*, 53 Fla. 650, 12 Ann. Cas. 359, 44 So. 213, 13 L. R. A., N. S., 320; *Crowell Lumber Co. v. Louisiana Public Service Com.*, 157 La. 676, 102 So. 866; *Fogelsville Electric Co. v. Pennsylvania Power & Light Co.*, 271 Pa. 237, 114 Atl. 822; *State v. Public Service Com.*, 117 Wash. 453, 201 Pac. 765, 203 Pac. 3.)

In *Humbird Lumber Co. v. Public Utilities Com.*, 39 Ida. 505, 514, 228 Pac. 271, this court said:

"The ultimate fact sought to be established in this proceeding was that the lumber company was a public utility. . . . . The commission has power to supervise and regulate public utilities (C. S., sec. 2450) and it may without doubt, while acting within the scope of its jurisdiction, exercise judicial functions in determining the question before it, but the law does not authorize the commission to exercise a judicial power or make a judicial order. That power is possessed by the courts and cannot be vested anywhere else. The legislature has not and could not vest such a power in the commission."

This court has previously, by entertaining such applications, indicated that *mandamus* is the proper proceeding in such a situation as herein. (*Sanderson v. Salmon River Co.*, 34 Ida. 145, 199 Pac. 999.)

In *Hatch v. Consumers Co.*, 17 Ida. 204, 104 Pac. 670, 40 L. R. A., N. S., 263, *mandamus* issued to compel a corporation to operate as a public utility. So here the one additional item necessary of determination, whether the defendant is a common carrier, does not deprive this court of jurisdiction and the right to decide such question on an application for a writ of mandate. (*Stoehr v. Natatorium Co.*, 34 Ida. 217, 200 Pac. 132.)

The complaint alleges in substance that the defendant company is operating a logging railroad, its articles of incorporation authorizing it to do so, that in its construction it exercised the right of eminent domain, that prior to its construction it made public representation that after its construction it would carry commodities generally in carload lots at reasonable rates as a common carrier, that it crosses public highways and uses the streets and alleys of at least one town site, that it is built into and through a heavily timbered country, containing many hundreds of millions of feet of standing timber owned by the defendant and other individuals and companies, that petitioner has lumber which it desires to have transported over said railroad and which cannot be practically or conveniently otherwise transported, that defendant's logging railroad connects with the Washington-Oregon Railroad and Navigation Company, a recognized common carrier, that part of the company's right of way was obtained from property owners on the representation that it would, after its completion, operate as a common carrier, that the road has been in operation for over a year, that defendant "is a railroad company under the Constitution and laws of the State of Idaho and owns and operates said railroad, which is a common carrier and public highway under the Constitution and laws of the State of Idaho, and that it is the duty of said defendant to haul the freight of the said petitioners,

and of others similarly situated, over its said railroad at reasonable freight rates, all of which said defendant fails, refuses and neglects to do," and asks in substance that this court declare defendant to be a common carrier and a public utility and as such be required to render such service.

This court has previously held that a logging railroad of the kind herein described is a common carrier and can be compelled to render service of the kind for which it was designed and built.

In *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Ida. 556, 579, Ann. Cas. 1918A, 189, 155 Pac. 680, the court said:

"In the case of *Connolly v. Woods*, 13 Ida. 591, 92 Pac. 573, the court referred to sec. 5 of art. 11 of the state Constitution which declares all railroads, transportation and express companies to be common carriers and the court held that every railroad is made a public service corporation and therefore entitled to exercise the right of eminent domain, and if it refuses to perform any of the duties that it owes to the public, it may be compelled to do so.

"In the McLean case, 24 Ida. 441, Ann. Cas. 1915D, 542, 134 Pac. 536, the court held that when a railroad is organized under the laws of the State as a railroad corporation and for public use, such railroad is governed by constitutional provisions and the statutes of the State; that railroads are public highways and common carriers, subject to legislative control.

"No doubt, under the provisions of said section of the Constitution, the logging railroad proposed would be required to haul logs of other land owners along its line, provided such land owners delivered their logs to the railroad for transportation, but it could not be compelled to put on a passenger and express train under the facts of this case. That section of the Constitution refers more particularly to railroads that are constructed for general transportation and not to such a road as the one referred to in the complaint, to be constructed for removing the timber from 400 acres of land."

In *McLean v. District Court,* 24 Ida. 441, 460, Ann. Cas. 1915D, 542, 134 Pac. 536, referred to *supra,* the court said:

"There are allegations in the petition and argument was made upon the hearing to the effect that the railroad company was not organized for the purpose of serving the public, but was organized for the sole purpose of carrying lumber and logs for personal use and that there was to be no public use when the railroad was completed and put in operation. The court, however, finds in this case that the railroad company was organized under the laws of the State and for a public use, and under the Constitution of this State, sec. 5, art. 11, that all railroads are public highways and common carriers, which brings it within the constitutional and statutory requirement that all railroads are public highways and common carriers 'subject to legislative control,' and it matters not what the intention of the corporation is or may be, it is made a common carrier by the Constitution and if the railroad company refuses to perform any of the duties it owes to the public, it may be compelled to act, and if it fails to operate its road, the property condemned reverts to the owner of the freehold."

As to enlarging a river for logging purposes, the court said:

"There is no doubt that when a person or corporation exercises the power of eminent domain, he or it assumes certain obligations to the public, and the grant of the right of eminent domain carries with it the right of public supervision and reasonable control. The improvement of said river is not for the use of the respondent alone, although under the conditions which exist it may be more benefited than others. But the river will be open to anyone who may have occasion to use it for floating logs and timber products." (*Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 787, 118 Am. St. 233, 88 Pac. 426.)

The test for determining whether a carrier is a public utility would seem to be whether it has held itself out as ready, able and willing to serve the public. (*Humbird*

*Lumber Co. v. Public Utilities Com.,* 39 Ida. 505, 228 Pac. 271; *Latah County v. Peterson,* 3 Ida. 398, 29 Pac. 1089, 16 L. R. A. 81.)

In *Connolly v. Woods,* 13 Ida. 591, 596, 92 Pac. 573, the situation was the reverse of that herein considered, the lumber company contending that it intended to operate its logging railroad as a public carrier and the defendant contending that the same was a mere subterfuge, and that being merely a private company, designed to operate privately, it could not exercise the right of eminent domain. The court said:

"One of the prominent questions in this case is whether the Idaho and Northwestern Railway Company is building, or extending its lines of railway for public or only for private purposes. In other words, whether under the provisions of our Constitution and law, that railway company is, in fact, a public service corporation and for that reason required, and may be compelled, to serve the public in carrying freight and passengers. If it is a public service corporation, then it has the right of eminent domain, and the defense that it has been fraudulently organized for private purposes is not a defense in that action. If it has refused to carry saw logs of others or transport their freight, it may be compelled to do so. Sec. 5 of art. 11 of the state constitution is as follows: 'All railroads shall be public highways, and all railroad, transportation and express companies shall be common carriers, and subject to legislative control, and the legislature shall have power to regulate and control by law the rate of charges for the transportation of passengers and freight by such companies or other common carriers, from one point to another in the State. Any association or corporation organized for the purpose shall have the right to construct and operate a railroad between any designated points within this state, and to connect within or at the state line with other railroads of other states and territories. Every railroad shall have the right, with its road, to intersect, connect with, or cross any other railroad under such regulations as may be pro-

vided by law and upon making due compensation.' That section provides that all railroads shall be public highways, and shall be common carriers subject to legislative control. Under that provision of the Constitution, every railroad is made a public service corporation, and is therefore entitled to the right of eminent domain, and if it refuses to perform any of the duties that it owes to the public, it may be compelled to do so.''

While there are some decisions in other states apparently to the contrary, in many of them it does not appear that their constitutional provisions are the same as ours, and the holding of this court, as above indicated, is in harmony with other expressions on this subject.

While *Dawkins Lumber Co. v. Carpenter & Co.*, 213 Ky. 795, 281 S. W. 1013, makes the point that eminent domain is not necessarily material, yet one of the cases relied upon therein evidently considered eminent domain as controlling. (*Michigan Public Utilities Com. v. Duke*, 266 U. S. 570, 36 A. L. R. 1105, 45 Sup. Ct. 191, 69 L. ed. 445, quoted in that case, holds:

''Plaintiff is a private carrier. His sole business is interstate commerce, and it is limited to the transportation covered by his three contracts. *He has no power of eminent domain* or franchise under the state and no greater right to use the highways than any other member of the body politic. He does not undertake to carry for the public and does not devote his property to any public use.'' (Italics ours.)

And as to holding out, *Varble v. Bigley*, 77 Ky. 698, 29 Am. Rep. 435, quoted in that case, holds:

''When a person has assumed the character of a common carrier, either by expressly offering his services to all who will hire him, or by so conducting his business as to justify the belief on the part of the public that he means to become the servant of the public, and to carry for all, he may be safely presumed to have intended to assume the liabilities of a common carrier, for he was bound to know that

the law would so charge him, and knowing, must have intended it."

*Frost v. Railroad Com.*, 271 U. S. 583, 47 A. L. R. 457, 46 Sup. Ct. 605, 70 L. ed. 1101, did not consider the effect of having the right of eminent domain or discuss the reasons given in the Idaho cases, cited *supra*, and furthermore the case is predicated on the fact that the person sought to be charged as a public utility never held himself out as such.

A secret intention not to be a public utility is not controlling. (*Anderson v. Smith-Powers Logging Co.*, 71 Or. 276, 139 Pac. 736, L. R. A. 1916B, 1089, 1093; *Cushing v. White*, 101 Wash. 172, 172 Pac. 229, L. R. A. 1918F, 463.)

Illinois, considering a somewhat similar situation, has restricted private carriers, and not common carriers, to where the construction is on the party's own land. (*Smitherman & McDonald v. Mansfield Hardwood Lumber Co.*, 6 Fed. (2d) 29; *Kenna v. Calumet H. & S. E. R. Co.*, 284 Ill. 301, 120 N. E. 259.)

█ Defendant urges that because it never has operated as a common carrier, it is not a common carrier and cannot be compelled to act as such. At least two controlling facts, urged by the plaintiff, are sufficient to overcome this contention:

1. A holding out to the public that they would operate as a common carrier. (*Taenzer v. Chicago, R. I. & P. R. R.*, 170 Fed. 240, 248; *Union Electric Light Co. v. Tibbe Power Co.* (Mo.), P. U. R. 1920B, 20; *Stevenson v. Hartman*, 191 App. Div. 406, 181 N. Y. Supp. 465, 467; *Anderson v. Smith-Powers Logging Co.*, 71 Or. 276, 139 Pac. 736, L. R. A. 1916B, 1089, 1093; *North American Ins. Co. v. Pitts*, 213 Ala. 102, 40 A. L. R. 1171, 104 So. 21; *State v. Nelson*, 65 Utah, 457, 42 A. L. R. 849, 238 Pac. 237.; *Cushing v. White*, 101 Wash. 172, 172 Pac. 229, L. R. A. 1918F, 463.)

2. The exercise of the right of eminent domain. In *Anderson v. Smith-Powers Logging Co.*, 71 Or. 276, 139 Pac. 736, L. R. A. 1916B, 1089, the Oregon court held

that a private lumber company could not exercise the right of eminent domain because it would not be for a public use, the converse being that before this right of eminent domain could be exercised, it must be for a public use. (*Pacific Spruce Corp. v. McCoy*, 294 Fed. 711; *McKivergan v. Alexander & Edgar Lumber Co.*, 124 Wis. 60, 102 N. W. 332.)

"It is the right of the public to use the road's facilities and to demand service of it, rather than the extent of its business which is the real criterion determinative of its character." (*United States v. Louisiana & P. R. R. Co.*, 234 U. S. 1, 34 Sup. Ct. 741, 58 L. ed. 1185, 1194.)

This case, when carefully considered, sustains the conclusion herein arrived at, saying (p. 1196):

"Because we reach the conclusion that the taplines involved in these appeals are common carriers, as well of proprietary as *nonproprietary traffic*, and as such entitled to participate in joint rates with other common carriers, that the determination falls far short of deciding—indeed, does not decide at all—that the division of such joint rates may be made at the will of the carriers involved and without any power of the commission to control." (Italics ours.)

It is true in that case the question was the right to participate in joint rates but the determination of the same required a decision as to whether or not the tap lines were common carriers, the court holding as above indicated.

*State v. Public Service Com.*, 117 Wash. 453, 201 Pac. 765, 203 Pac. 3, the strongest case cited by defendants in support of their position is at least weakened by the comment in *State v. Kuykendall*, 130 Wash. 674, 228 Pac. 853, on the statute evidently later adopted. In any event, we do not choose to follow *State v. Public Service Com., supra,* in view of the previous declarations of this court construing our constitution relative to this question.

██ The affidavit sufficiently charged defendant with being a public utility and common carrier and the demurrer is overruled.

Since an answer has already been filed, the cause is referred to Hon. W. F. McNaughton, district judge of the

eighth judicial district, to take evidence, make findings of fact and conclusions of law, and report the same to this court.

Budge and T. Bailey Lee, JJ., concur.

TAYLOR, J., Dissenting.—The opinion misinterprets the effect of the pleadings and of sec. 5, art. 11 of the constitution and the Public Utilities Act. The facts pleaded do not make the defendant a "railroad" company or a public utility. Even if it were a railroad company, the constitution gives the legislature exclusive control of "railroad companies," makes them "common carriers and subject to legislative control." The fact that the legislature has explicitly provided for control by the Public Utilities Commission of railroads, railroad corporations, common carriers, and "public utilities" operated "for compensation" or "for public use" (C. S. secs. 2376–2378, 2380, 2396), and has not legislated to control those not operating "for compensation" or "public use," amounts to an explicit legislative declaration of intent to exclude the latter from such control, and to forego as yet such control thereof. For this court to undertake to control the defendant, or to force it to assume such operation "for compensation" or for "public use," and thus force it under the operation of the Utilities Act, is the plainest sort of judicial legislation, in violation of the intent of the legislature and of both sec. 5, art. 11, and sec. 1, art. 2 of the constitution.