## PRODUCERS TRANSPORTATION COMPANY *v.* RAILROAD COMMISSION OF THE STATE OF CALIFORNIA ET AL.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 219.    Argued December 12, 1919.—Decided January 5, 1920.

If in the beginning or during its subsequent operation a pipe line is devoted by its owner to the use of the public in transporting oil for hire, and if the right thus extended to the public has not been withdrawn, the pipe line is a public utility and its owner a common carrier whose rates and practices may be subjected to state regulation consistently with the due process clause of the Fourteenth Amendment. P. 230.

The following grounds, relied on by the state court, have adequate support in the evidence and sustain its conclusion that the plaintiff in error had devoted its pipe line to public use, viz: (1) authority in articles of incorporation to establish and carry on a general transportation business for transporting any oils produced by the pipeline company or others; (2) acquisition of part of its right of way through eminent domain proceedings, admissible only, under the state law, if the condemnation was for a public use and was by an "agent of the State," and averments in such proceedings by the condemnor that it was a common carrier seeking the right of way for a public use; (3) transportation in substance for all producers seeking

the service, though done in form through an intermediate agency and a system of contracts, it appearing that membership in such agency was readily obtained and had not been refused. P. 231.

A common carrier cannot, by making contracts for future transportation, prevent or postpone the exertion by a State of the power to regulate the carrier's rates and practices. P. 232.

Nor does the contract clause of the Constitution interpose any obstacle to the exertion of that power. *Id.*

176 California, 499, affirmed.

THE case is stated in the opinion.

*Mr. A. V. Andrews,* with whom *Mr. Thomas O. Toland, Mr. Lewis W. Andrews* and *Mr. Paul M. Gregg* were on the briefs, for plaintiff in error.

*Mr. Douglas Brookman* for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

We here are concerned with a statute of California and an order made thereunder by the state railroad commission, both of which are said to be repugnant to the Constitution of the United States, and therefore invalid.

The statute declares that every private corporation or individual operating "any pipe line or any part of any pipe line . . . for the transportation of crude oil . . . ", directly or indirectly, to or for the public, for hire, . . . and which said pipe line . . . is constructed or maintained upon, along, over or under any public highway, and in favor of whom the right of eminent domain exists," shall be deemed a common carrier and subject to the provisions of a prior act investing the railroad commission with extensive powers over the rates and practices of those who operate public utilities. Stats. 1913, c. 327; Stats. 1911, Ex. Sess., c. 14.

The order of the commission was made after notice and

a full hearing; is based upon a finding that the Producers
Transportation Company, the plaintiff in error, has a
pipe line from the San Joaquin oil fields to Port Harford,
on the Pacific coast, whereby it transports crude oil for
pay in such circumstances that the statute requires that
it be regarded and dealt with as a common carrier; and
directs the filing with the commission of the company's
schedule of rates or charges and the rules and regulations
under which the transportation is conducted.

In the state court the company contended that the
evidence before the commission, all of which was before
the court, conclusively established that the pipe line was
constructed solely to carry crude oil for particular pro-
ducers from their wells to the seacoast under strictly
private contracts, and that there had been no carrying for
others, nor any devotion of the pipe line to public use; and
the company further contended that the statute, as
applied to this pipe line, was repugnant to the due process
of law clause of the Fourteenth Amendment and the con-
tract clause of § 10 of Article I of the Constitution, and
that the order of the commission was void as offending
against these clauses. The state court sustained both
the statute and the order, 176 California, 499, and the
company sued out this writ of error.

The company was organized under the laws of Califor-
nia in 1909 and its pipe line was put in operation in 1910.
The statute in question took effect August 10, 1913, and
the order was made December 31, 1914.

It is, of course, true that if the pipe line was constructed
solely to carry oil for particular producers under strictly
private contracts and never was devoted by its owner to
public use, that is, to carrying for the public, the State
could not by mere legislative fiat or by any regulating
order of a commission convert it into a public utility or
make its owner a common carrier; for that would be taking
private property for public use without just compensa-

tion, which no State can do consistently with the due process of law clause of the Fourteenth Amendment. *Chicago, Burlington & Quincy Ry. Co. v. Drainage Commissioners,* 200 U. S. 561, 593; *Northern Pacific Ry. Co. v. North Dakota,* 236 U. S. 585, 595; *Associated Oil Co. v. Railroad Commission,* 176 California, 518, 523, 526. And see *Munn* v. *Illinois,* 94 U. S. 113, 126; *Louisville & Nashville R. R. Co. v. West Coast Naval Stores Co.,* 198 U. S. 483, 495; *Weems Steamboat Co. v. People's Steamboat Co.,* 214 U. S. 345, 357; *Chicago & Northwestern Ry. Co. v. Ochs,* 249 U. S. 416, 419–420. On the other hand, if in the beginning or during its subsequent operation the pipe line was devoted by its owner to public use, and if the right thus extended to the public has not been withdrawn, there can be no doubt that the pipe line is a public utility and its owner a common carrier whose rates and practices are subject to public regulation. *Munn* v. *Illinois, supra.*

The state court, upon examining the evidence, concluded that the company voluntarily had devoted the pipe line to the use of the public in transporting oil, and it rested this conclusion upon the grounds, first, that one of the things which the company was authorized to do, if it so elected, as shown in its articles of incorporation, was "to establish and carry on . . . a general transportation business for the purpose of transporting . . . any of the oils . . . produced . . . by this corporation, or any other person, firm, partnership, association or corporation"; second, that in acquiring its right of way it resorted to an exercise of the power of eminent domain,—admissible only if the condemnation was for a "public use," Code Civ. Proc., §§ 1237, 1238, and was by "an agent of the State," Civ. Code, § 1001,— and in that proceeding asserted; and obtained a judgment reciting, that it was engaged in transporting oil by pipe line "as a common carrier for hire" and that the right of way was sought for "a public use"; and, third, that look-

ing through the maze of contracts, agency agreements and the like, under which the transportation was effected, subordinating form to substance, and having due regard to the agency's ready admission of new members and its exclusion of none, it was apparent that the company did in truth carry oil for all producers seeking its service, in other words, for the public. See *Pipe Line Cases*, 234 U. S. 548.

While some criticism is made of this conclusion and the grounds upon which it is rested, we are of opinion that the grounds have adequate support in the evidence and that they sustain the conclusion. True, one witness stated that "the pipe line was not laid upon the right of way which was obtained in the condemnation suit"; but, as his further testimony disclosed that he meant only that a part of the right of way so obtained was not used when the pipe line was laid, we think the state court rightly regarded the company as having acquired some of its actual right of way by exercising the power of eminent domain as a common carrier. If it was a common carrier at the time of the condemnation suit it is such now, for nothing has occurred in the meantime to charge its status.

. That some of the contracts before mentioned were entered into before the statute was adopted or the order made is not material. A common carrier cannot by making contracts for future transportation or by mortgaging its property or pledging its income prevent or postpone the exertion by the State of the power to regulate the carrier's rates and practices. Nor does the contract clause of the Constitution interpose any obstacle to the exertion of that power. *Chicago, Burlington & Quincy R. R. Co.* v. *Iowa*, 94 U. S. 155, 162; *Louisville & Nashville R. R. Co.* v. *Mottley*, 219 U. S. 467, 482; *Union Dry Goods Co.* v. *Georgia Public Service Corporation*, 248 U. S. 372.

*Judgment affirmed.*