Robinson, J.
The contention of the plaintiffs in error is that by reason of the fact that the capital stock of the distributing companies is owned by the producing company, the producing company is able to and does fix the price which the distributing companies, concededly public utilities, must charge other consumers, and that unless the producing company be adjudged a public utility, and its rates and charges be subjected to regulation by the public utilities commission, the public utilities commission will be powerless to afford relief to the consumer, since the public utilities commission is bound to allow the distributing companies a fair return upon- their investment and is limited in its inquiry in determining the rate and charge which the distributing companies shall charge the consumers to the contract price between the distributing companies and the producing company, plus such additional sums as will enable them to earn a fair return upon their investment.
We do not subscribe to this theory. The public utilities act provides, Section 614-12, General Code:
“Every public utility shall furnish necessary and adequate service and facilities which shall be reason *142 able and jnst, and every unjust or unreasonable charge for such service is prohibited and declared to be unlawful.”
Section 614-13. “Every public utility shall furnish and provide with respect to its business such instrumentalities and facilities as shall be adequate and in all respects just and reasonable. All charges made or demanded) for any service rendered, or to be rendered, shall be just-and reasonable, and not more than allowed by law or by order of the commission. Every unjust or unreasonable charge made or demanded for any service, or in connection therewith, or in excess of that allowed by law or by order of the commission, is prohibited and declared to be unlawful.”
Under, this broad authority the public utilities commission is authorized to make an order affecting a public utility, to remedy every unjust or unreasonable charge, and may investigate and determine whether the contracts of the distributing companies are just and reasonable, and, if it finds they are not just and reasonable, it may find the terms which would be just and reasonable, and, upon such finding, base the price, and charge at which such distributing companies must sell their service.
In the instant case, if the facts should warrant the conclusion that the distributing companies could manufacture the electric energy at a cost sufficiently below their contract price with the producing company to earn a fair return upon the necessary investment, or if the facts should warrant the conclusion that the distributing companies could purchase a sufficient electric energy from some other produc *143 ing company on a more advantageous contract, the public utilities commission could and would be required to base the rates and charges to be made by the distributing companies upon such producing or contract cost, plus a reasonable return upon their investments. City of Cleveland v. Public Utilities Commission, 102 Ohio St., 341.
To enable the public utilities commission to fix just and reasonable rates and charges to be made by the distributing companies, we are, therefore, not driven by necessity to hold that the producing company in the instant case is a public utility, and, if we were so driven, in the absence of a dedication of the property to the public service we would be without power to take private property for public use without just compensation. Producers Transp. Co. v. Rd. Comm. of the State of California, 251 U. S., 228.
However, the question whether The Southern Ohio Power Company is in fact a public utility is before this court for answer. Having been made a party in the complaint filed before the public utilities commission, The Southern Ohio Power Company filed a motion to be dismissed therefrom upon the ground that it was not a public utility. The public utilities commission, treating the motion as an answer and raising an issue of fact, proceeded to hear evidence upon such issue, and upon the evidence found that the company was not a public utility, and error is prosecuted here from such finding.
The evidence discloses that The Southern Ohio Power Company is a corporation incorporated under the laws of the state of Maine, and by its articles of incorporation is authorized, among; other things:
*144 ‘ ‘ To buy, sell, lease and use machinery, generators, motors, lamps, apparatus, devices, supplies and articles of every kind pertaining to or in any wise connected with the production, use, distribution, regulation, control or application of electricity or electrical apparatus for light, heat, power, telegraph, telephone, railway, manufacturing and any and all other purposes; to construct, acquire, purchase, use, sell, or lease any works, construction or plants or parts thereof connected with or involving the production, use, distribution, regulation, control or application of electricity or electrical apparatus for any of such purposes; to buy, acquire, lease, use, produce, furnish and supply electricity or any other power or force, in any form and for any purpose whatsoever.
“To purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of the shares of the capital stock of, or any bonds, securities or evidences of indebtedness created by any other corporation or corporations of this or any other state, territory or country, and while owner of such stock, to exercise all the rights, powers and privileges of ownership, including the right to vote thereon.
“To purchase, lease, or otherwise acquire, in whole or in part, the business, good will, rights, franchises and property of every kind, and to undertake the whole or any part of the assets or liabilities of any person, firm, association or corporation engaged in or authorized to conduct any business similar to any business authorized to be conducted by this corporation; to hold or in any manner dispose of the whole or any part of the business or property so acquired, and to exercise all the powers necessary or incidental to the conduct of such business.
*145 “To join or consolidate with, and to enter into agreements and co-operative relations not in contravention of law with any persons, firms, associations or corporations, governmental, municipal or otherwise, in and about the carrying on and out of all or any of the purposes of this company.”
The evidence further discloses that its property consists of an electric generating plant located at Floodwood Station in Athens county and high voltage transmission lines leading to the distributing plants at Athens and Nelsonville; that prior to the construction of the plant now owned by The Southern Ohio Power Company, at Floodwood, there were located at Athens and Nelsonville electric power plants that generated and distributed power locally; that one F. C. Elliott, as trustee, constructed the plant at Floodwood, and at the same time acquired, as trustee, the plants at Nelsonville and Athens; that the capital for the construction of the plant at Floodwood and the capital for the acquiring of the plants at Nelsonville and Athens came from a common source, to-wit, from the persons for whom Elliott was trustee; that upon the completion of the plant at Floodwood The Central Electric Producing Company was organized and took over the property, The Hocking Power Company was organized and took over the property at Nelsonville and The Athens Electric Company was organized and took over the property at Athens, all incorporated under the laws of the State of Ohio; that at the same time The Ohio Electric Securities Company was organized under the laws of the state of Maine; that The Ohio Electric Securities Company owned all of the stock of the three corporations, and *146 the stockholders of The Ohio Electric Securities Company were the persons for whom Elliott, as trustee, constructed the properties at Floodwood and acquired the properties at Nelsonville and Athens; and that that ownership continued until December 31, 1920, when The. Southern Ohio Power Company purchased of The Central Electric Producing Company the property at Floodwood and assumed the contractual obligations of The Central Electric Producing Company.
The evidence does not disclose how the ownership of the stock of The Hocking Power Company and The Athens Electric Company passed out of The Ohio Electric Securities Company into The Southern Ohio Power Company, but does disclose an admission by counsel for The Southern Ohio Power Company that it now owns the stock of The Hocking Power Company and The Athens Electric Company.
The record also discloses that John H. Poston is president and general manager of The Southern Ohio Power Company, and is also secretary and treasurer and acting vice-president of The Hocking Power Company and The Athens Electric Company.
The situation, then, of the three corporations is that the property of each is owned in fact by the stockholders of The Southern Ohio Power Company; that the earnings and losses of each company inure to or fall upon the same persons; that the separate ownership of the producing company at Floodwood and the distributing companies at Athens and Nelsonville is but a fiction, and there is in fact a single ownership of all. The formal contracts of 1915, *147 1918 and 1920, between the producing company and the distributing companies, necessarily were not made for the purpose of defining the rights between and fixing the obligations of the producing company and the distributing companies, but were made for “public consumption.” The three corporations necessarily can have no separate or adverse interests, can have no controversies with each other, and no antagonistic contractual relations, any more than an individual may have such relations with himself. The separate organizations are but fictions and exist apparently for the sole purpose of defeating the operation of the law.
This court has declared in First National Bank of Chicago v. Trebein Co., 59 Ohio St., 316: “In contemplation of law a corporation is a legal entity, an ideal person, separate from the real persons who compose it. This fiction, however, is limited to the uses and purposes for which it was adopted — convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members. But the fiction cannot be abused; a corporation cannot be formed for the purpose of accomplishing a fraud or other illegal act under the disguise of the fiction; and when this is made to appear, the fiction will be disregarded by the courts and act of the real parties dealt with, as though no such corporation had been formed, on the ground that fraud vitiates everything into which it enters, including the most solemn acts of men.”
*148 In the case of State, ex rel., v. Standard Oil Co., 49 Ohio St., 137, at page 177, Minshall, Judge, said: “The general proposition that a corporation is to he regarded as a legal entity, existing separate and apart from the natural persons composing it, is not disputed; but that the statement is a mere fiction, existing only in idea, is well understood, and not controverted by any one who pretends to accurate knowledge on the subject. It has been introduced for the convenience of the company in making contracts, in acquiring property for corporate purposes, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals. All fictions of law have been introduced for the purpose of convenience and to subserve the ends of justice. It is in this sense that the maxim in fictione juris subsistit aequitas is used, and the doctrine of fictions applied. But ivlien they are urged to an intent and purpose not within the reason and policy of the fiction they have always been disregarded by the courts. Broom’s Legal Maxims, 130. ‘It is a certain rule,’ says Lord Mansfield, C. J., ‘that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted.’ Johnson v. Smith, 2 Burr., 962. ‘They were invented,’ says Brinkerhoff, J., in Wood v. Ferguson, 7 Ohio St., 291, ‘for the advancement of justice, and will be applied for no other purpose.’ ”
In the case of Parkside Cemetery Assn. v. Clev., B. & G. Lake Traction Co., 93 Ohio St., 161, John *149 son, Judge, said at page 168: “That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, it may be disregarded.”
In the case of Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189, Spear, J., said at page 200 :
“Much learning has been indulged in and much space occupied by text-writers and others in an effort to differentiate the essential character of a corporation from that of its stockholders, and great ingenuity has been displayed in the argument, but it has been in the main a fruitless metaphysical discussion. For the purpose of description and in defining corporate rights and obligations, and characterizing corporate action, the fiction that the corporation is an artificial person or entity, apart from its members, may be convenient and possibly useful, but in the opinion of the writer the argument favoring the essential separate entity of the corporation fails, and it is believed that the effort has resulted in misleading conceptions and in much confusion of thought upon the subject. When all has been said it remains that a corporation is not in reality a person or a thing distinct from its constituent parts, and the constituent parts are the stockholders, as much so in essence and in reality as the several partners are the constituent parts of the partnership. Stripped of misleading verbiage, the corporation is a device created by law whereby an aggregation of *150 persons who may avail themselves of its privileges by organization, are permitted to nse their property in a way different from that which is permitted to others who do not so organize, and with certain special advantages, among which are a measure as to personal liability for debts, and the power to perpetuate the organization, denied by the law to all others. With this conception of a corporation, it would seem to follow as matter of course, that the property of a corporation, although subject under some conditions to rights of creditors, is, in the last analysis, that of the stockholder's.”
Applying the doctrine thus enunciated by this court and several of its distinguished members, the ownership 'in the property of these three corporations is in fact in the stockholders of The Southern Ohio Power Company, and, whatever the purpose, the effect is to withhold by a fiction one of these properties from the operation of the law as to public utilities, which but for the separate organization would be subject thereto. The facts disclose that the division of this whole property into three separate parts is a division by denomination only; that while the ownership of the three .plants is designated by such owners as separate, ownership is in jPact the same; that the owners seek by resort to the fiction of corporate ownership to limit the effect of the dedication of the properties of their distributing companies to those companies alone; that by reason of the fact that the whole is but one commonly owned property engaged in a single enterprise, the act of one nominal division thereof is attributable to all; and that The Southern Ohio Power Company *151 through its commonly owned associated corporations, The Athens Electric Company and The Hocking Power Company, is engaged in the selling of electric energy to consumers within the provisions of Sections 614-2 and 614-2a, General Code, and is a public utility subject to the jurisdiction of the public utilities commission of Ohio.
The order of the public utilities commission will, therefore, be reversed, and the cause remanded to that commission for further proceedings according to law.

Order reversed, cmd cause remanded.

Hough, Wanamaker, Jones, Matthias and Clark, JJ., concur.