## TEXOMA NATURAL GAS CO. v. RAILROAD COMMISSION OF TEXAS et al. and three other cases.

### Nos. 412–415.

District Court, W. D. Texas, Austin Division.

June 8, 1932.

Baker, Botts, Andrews & Wharton and Andrews, Streetman, Logue & Mobley, all of Houston, Tex., Black & Graves, of Austin, Tex., and J. J. Hendrick, of Chicago, Ill., for complainant Texoma Natural Gas Co.

Phillips, Trammell, Chizum, Price & Estes, of Fort Worth, Tex., James W. Finley and R. E. Cullison, both of Bartlesville, Okl., Robert S. Sloan and Frueauff, Robinson & Sloan, all of New York City, for complainant Cities Service Gas Co.

Morgan, Culton, Morgan & Britain, of Amarillo, Tex., and Black & Graves, of Austin, Tex., for complainant North American Oil & Gas Co.

Vinson, Elkins, Sweeton & Weems, of Houston, Tex., Madden, Adkins, Pipkin & Keffer, of Amarillo, Tex., and Black & Graves, of Austin, Tex., for complainant Panhandle Eastern Pipe Line Co.

James V. Allred, Atty. Gen., Fred Upchurch and Maurice Cheek, Asst. Attys. Gen., and Robert E. Hardwicke, Sp. Counsel, of Fort Worth, Tex., for defendants.

Before HUTCHESON, Circuit Judge, and WEST and BRYANT, District Judges.

WEST, District Judge.

The enforcement of an act of the Legislature is restrained, on plaintiffs' petitions, as in violation of the Federal Constitution, awaiting consideration of a three-judge court on prayers for interlocutory injunctions. USCA, tit. 28, § 380. The court so constituted sits in hearing. The cases are consolidated. The required diversity of citizenship of the parties and values of matters in controversy are apparent, and the jurisdiction of the court is not questioned. The Com-

mon Purchaser Act, regulating oil and gas pipe lines, was passed by the Forty-Second Legislature of Texas, First Called Session, p. 58, c. 28 (Vernon's Ann. Civ. St. art. 6049a), July 14 to August 12, 1931. The relevant portions follow:

"Sec. 8a. That in order to further conserve the natural gas resources of this State every person, association of persons, joint stock company, limited co-partnership, partnership, corporation, gas pipe line company or gas purchaser now, or hereafter, claiming or exercising the right to carry or transport natural gas by pipe line, or pipe lines, for hire, compensation or otherwise within the limits of this State, or which is now engaged or shall hereafter engage in the business of purchasing, or taking, natural gas, or residue gas or casinghead gas shall be a common purchaser thereof, and shall purchase, or take, such gas under such rules or regulations as may be prescribed by the Commission, in the same manner, under the same inhibitions against discriminations and subject to the same provisions as are herein set out with respect to common purchasers of oil.

"Sec. 8aa. In addition to persons enumerated in Section 8, hereof, any and all other persons, association of persons, or corporations, operating any pipe line, which may now, or hereafter, purchase crude oil, petroleum, or natural gas in this State, whether they be common carriers or affiliated with common carriers or not, shall be a common purchaser of such crude oil, petroleum or natural gas, and shall purchase crude oil, petroleum or natural gas, offered it for purchase without discrimination in favor of one producer or person as against another as provided in Section 8 hereof."

The common purchaser of gas, as defined, includes persons, associations, partnerships, corporations, pipe lines or purchasers, claiming or exercising the right to transport gas by pipe lines for hire, compensation, or otherwise, thus embracing common and private pipe line carriers of gas, whether purchasers or not. The common purchasers are required to take gas under regulations prescribed by the Railroad Commission.

Penalties for violation of the act or of any rule or regulation of the commission include penalties ranging from $100 minimum to $1,000 for each offense, every day constituting a separate offense; providing that one-half of penalty recovered because of discrimination is to be devoted to the use of the discriminatee, who may also sue on his own account, for damages. The permit of the corporation common purchaser to do business in the state may be canceled at the suit of the Attorney General. The Railroad Commission may require reasonable extensions of lines; mandatory injunction is authorized to compel extensions. Suits are authorized to prevent discrimination between royalty owners and landowners in purchases or for unreasonably delaying payment for gas purchased.

The plaintiffs allege that they are nonresident corporations, authorized to do business in this state, engaged in transporting gas through pipe lines from Texas to markets in other states; that they own and control the gas areas from which their gas is produced from their own wells; then taken into their pipe lines and delivered, under the requirements of contracts previously made, to distributors and ultimate consumers in states named other than Texas; that they are not purchasers of gas, and that their lines are not being used to transport gas for others; that they have not exercised, and do not exercise, the right of eminent domain, nor hold themselves out as common carriers of gas for hire, nor does the public make use of their lines to transport gas; that the reserves of gas owned and controlled by them are sufficient to supply the demand of existing contracts for the present and future; and that the maximum capacities of their gas lines are employed in the deliveries of gas in other states; that to compel them to conform to the requirements of the statute and to the rules of the Railroad Commission will be to deprive them of their property without due process of law, contrary to the Fourteenth Amendment of the Constitution. The plaintiffs also allege that the act questioned seriously interferes with and burdens interstate commerce, contrary to section 8, art. 1, of the Constitution of the United States; and impairs the obligations of lawful contracts existing prior to the passage of the act and deprives them of their property rights therein, contrary to section 10, art. 1, of said Constitution, and contrary to section 16, art. 1, of the Constitution of the state of Texas.

Plaintiffs allege that producers in the same field, with the approval of the Railroad Commission, have made formal demands of plaintiffs, accompanied by tenders and offers to sell definite quantities of gas, that they purchase the gas offered as required by the terms of the act. The producers also demand that plaintiffs extend their pipe lines to serve areas owned by the demanding producers in the same field who are without market out-

let. They pray for temporary restraining orders, interlocutory and permanent injunctions.

The defendants allege that plaintiffs' business is affected by the public interest; that the purpose of the act is to require pipe line producers to share their market outlets with other producers in the same field; that they intend to enforce the act and the rules made pursuant thereto; and admit that demands have been made on plaintiffs by producers in the same field to purchase gas offered for sale, as alleged.

On verified pleadings, affidavits, documents, records, maps, and oral testimony, we find the following facts:

The plaintiffs are all Delaware corporations, authorized to transact business in Texas. Their several businesses are substantially the same. They own or control, by stock ownership, leases, or other contracts, gas areas approximating 600,000 acres in the Panhandle of Texas (being the extreme northern part of Texas, bounded north and east by Oklahoma, and west by New Mexico). The defendants in each case are the members of the Railroad Commission of Texas, the Attorney General and the Governor, all residents and citizens of the state. The plaintiffs severally own, operate, and control gas pipe line systems that carry the gas produced from their several separate areas to distributing companies, in states other than Texas. The particular field supplying gas to these lines has been roughly outlined by producing wells as approximating an area in the Panhandle 100 miles long by 15 in width, about 1,500 square miles, estimated to contain sufficient gas to supply ten million people for fifteen or twenty years.

The plaintiff Texoma Company and affiliated companies, after several years of effort and the expenditure of many millions of dollars, secured reserves of gas in place, perfected their transport system, and made definite contracts to supply Northern Illinois, the Chicago districts, and intermediate territory. This company produces its own gas from wells from its own leases within the particular field mentioned. The gas moves continuously from intake into its pipe lines in Texas, thence by affiliated companies' lines to consumers in Illinois and intermediate states. Like methods of sources of supply and of carrying gas by pipe lines in compliance with existing contracts are used by plaintiff Cities Service Gas Company and subsidiary companies, to reach market demands of dense populations of states other than Texas, these results likewise requiring an outlay of millions of dollars. The plaintiffs North American Oil & Gas Company and Panhandle Eastern Pipe-Line Company, under like conditions, have each acquired control of gas areas in the Panhandle, made contracts to market their products in distant states, constructed lines and contracted with other lines for continuous movement to consumers out of Texas into and through other states, which also required a capital outlay of millions. The several properties are operated in carrying out contracts entered into before the passage of the act, which requires the transport of gas by pipe lines from the points of intake on lands owned or controlled by the several plaintiffs within this state to delivery points in other states named in the bills. That the plaintiffs are at present using, and will so continue to use in the future, the several maximum capacities of their pipe lines in transporting gas to out-of-state distributing companies. That the plaintiffs are obligated by contracts to continue periodical development and production of gas by drilling wells, and failure to do so will entail forfeiture of contracts. That plaintiffs have acquired no easements over other property through the exercise of the right of eminent domain in transporting gas by pipe lines, nor used their lines in carrying the gas of others for pay or hire, nor purchased gas from others for transport, nor transported any gas other than that developed by them on their own leaseholds to meet contractual obligations.

We further find that there are embraced within the particular gas field from which plaintiffs are supplying their demands many owners of lands and leasehold interests who are at present without market outlet; that, should the plaintiff continue to drill their own territory according to declared intent, eventually their own and the contiguous territories of others will be drained of gas; that there are not as yet any practical methods used by which gas may be stored in substantial quantity; and that gas must flow continuously from producer to consumer.

The defendants admit that they intend to enforce the act and the commission rules; that producers in the same field demand of plaintiffs that they purchase definite quantities of gas offered for sale and demand that they extend their pipe lines to serve demandants' areas. These demands are approved by the commission. It therefore appears that the plaintiffs were about to be subjected to the drastic and severe pains and penalties of the

act and the rules when defendants were rightfully restrained by the court.

 From these facts we conclude that the plaintiffs are private pipe line carriers who have not devoted their property to the public use for hire or compensation, that the penalties imposed for violating the terms of the act, and the rules, are so extreme as to make the remedies at law inadequate, and that resort to equity in restraining the operation of the act is properly exercised. Terrace v. Thompson, 263 U. S. 197–214, 44 S. Ct. 15, 68 L. Ed. 255; Champlin Refining Co. v. Corporation Commission of Oklahoma et al., 52 S. Ct. 559, 76 L. Ed. ——, opinion May 16, 1932. The act is all-embracing, and includes both common and private carrier of gas by pipe line. The carrier's private status is changed to that of public by the declaration of the act alone. The Legislature is without power to do this. It is taking private property for public use without just compensation, inconsistent with the due process of law clause of the Fourteenth Amendment to the Constitution. Michigan Public Utilities Commission v. Duke, 266 U. S. 577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105, citing Producers' Transportation Co. v. Railroad Commission, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239; Wolff Co. v. Industrial Relations Court, 262 U. S. 522, 535, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280. See, also, Frost & Frost Trucking Co. v. R. R. Commission, 271 U. S. 592, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Smith v. Cahoon, 283 U. S. 563, 51 S. Ct. 582, 75 L. Ed. 1264.

 The plaintiffs are engaged exclusively in producing, selling, and transporting gas from the state of Texas for delivery to purchasers in other states, under contracts made prior to the enactment of the statute. These are the essential elements of interstate commerce. Producers' Transportation Co. v. California Railroad Commission, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239; Eureka Pipe Line Co. v. Hallanan, 257 U. S. 265, 42 S. Ct. 101, 66 L. Ed. 227; United Fuel Gas Co. v. Hallanan, 257 U. S. 277, 42 S. Ct. 105, 66 L. Ed. 234, citing Railroad Commission of Ohio v. Worthington, 225 U. S. 101, 108, 32 S. Ct. 653, 56 L. Ed. 1004; United States v. Reading Co., 226 U. S. 324, 327, 33 S. Ct. 90, 57 L. Ed. 243; Western Union Telegraph Co. v. Foster, 247 U. S. 105, 113, 38 S. Ct. 438, 62 L. Ed. 1006, 1 A. L. R. 1278; Champlin Refining Co. v. Corporation Commission of Oklahoma, supra.

 While the act purports to conserve oil and gas as natural resources of the state, defendants concede that plaintiffs' operations do not result in waste. The state cannot burden interstate commerce under the guise of police regulation. Lemke v. Farmers' Grain Co., 258 U. S. 58, 59, 42 S. Ct. 244, 66 L. Ed. 458, citing Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

 The act requires pipe-line carriers of gas to assume the obligations not only of common carriers but those of common purchasers. It presumes that only the interstate pipe lines in this field have market outlets; that others therein are without capital, and cannot reach distant markets; that, unless plaintiffs are forced by law to purchase gas from others in the same field and compelled to extend lines to producing wells to take the gas purchased from others, the gas appertaining to their areas will ultimately be drained by plaintiffs' wells.

Or, as admitted by defendants, the purpose of the act is to compel pipe line producers to share their markets with producers in the same field who are without market, by requiring them to purchase. The equitable principle of correlative rights or ratable taking of gas from a common pool is sought to be applied through compulsory purchase. The act requires a private carrier engaged in interstate commerce to assume the responsibilities of a common carrier and those of a common purchaser. This invades the field of federal cognizance, interferes with and burdens the commerce between the states, contrary to article 1, § 8, of the Federal Constitution. West v. Kansas Natural Gas Co., 221 U. S. 229, 31 S. Ct. 564, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193; State Tax Commission of Mississippi v. Interstate Gas Co., 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156, and cases cited.

 To avoid forfeiture of contracts, made prior to the act, securing gas reserves, plaintiffs must develop leaseholds by systematic periodical drilling, over terms of years, and must provide a continuous flow of gas to consumers in distant states through lines used to full capacity. These obligations and the requirements of the act and the rules are in direct conflict. To purchase and take into their lines gas of others would impair the obligations previously incurred and destroy rights created, and in effect force plaintiffs to make new contracts of purchase from others, contrary to the contract clause of the Federal Constitution, article 1, section 10, and contrary to the like clause in the Constitution of the state of Texas, article 1, sec-

tion 16. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321; Missouri, K. & T. Ry. Co. v. Oklahoma, 271 U. S. 303, 46 S. Ct. 517, 70 L. Ed. 957.

■ The act directs the common purchaser to buy gas when offered for sale by others, but is silent as to the price to be paid, and all other essentials are left to conjecture. The business of dealing in gasoline is held not to be affected with a public interest, so that a state Legislature is powerless to fix prices at which it may be sold. Williams v. Standard Oil Co., 278 U. S. 239, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596, citing cases. The gas under question here is not affected with a public interest, and, even so, the act burdens interstate commerce. The Railroad Commission has made and published rules and regulations carrying into effect the purposes of the act. They are also attacked on the same and other grounds as are urged against the statute.

■■ The subject-matter of the act and rules is confined to oil and gas. Some of the sections relate to both. Section 13 of the act provides that the invalidity of any section of this act or part thereof shall not affect the remainder. The subject-matter at issue here is gas. The relief sought arises out of the asserted invalidity of the entire act and particularly of those sections and rules which have to do with the production, purchase, and transportation by pipe lines of natural gas.

The first eight sections of the act (Vernon's Ann. Civ. St. art. 6049a) refer definitely to crude oil or petroleum. Section 8 names the persons and legal entities constituting a common purchaser of oil. Section 8a does the same as to a common purchaser of gas. Section 8aa provides that; in addition to those mentioned in section 8; "any and all" operating pipe lines who purchase oil or gas shall be common purchasers. Nine sections—11 and 11a to h—cover named penalties and outline procedure governing failure of the common purchaser of oil or gas to observe the conditions prescribed by the act and rules. Section 11j prohibits the Commission's using a standard of production of oil or gas which balances the amount of production with market demand.

"The unconstitutionality of a part of an act does not necessarily defeat or affect the validity of its remaining provisions." Champlin Refining Co. v. Corp. Comm. of Okla. et al., 52 S. Ct. 559, 565, 76 L. Ed. ——, opinion May 16, 1932, supra, citing Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 565, 22 S. Ct. 431, 46 L. Ed. 679; Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 635, 15 S. Ct. 912, 39 L. Ed. 1108; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 395–396, 14 S. Ct. 1047, 38 L. Ed. 1014; Field v. Clark, 143 U. S. 649, 695, 696, 12 S. Ct. 495, 36 L. Ed. 294; Williams v. Standard Oil Co., 278 U. S. 235, 242, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596. Section 13 of the act evidences the intention of the Legislature that invalid portions might be dropped if what is left is fully operative as law. The portions of the act that refer to oil and gas separately or in conjunction can be continued in effect without affecting the validity of the act as a whole. We are of opinion that the mentioned sections of the act and rules of the Commission which refer to gas generally, and specially to the West Panhandle gas field, are void and unenforceable against the plaintiffs, as in conflict with the Federal and state Constitutions, but leave unaffected as not in issue the act and rules regulatory of oil or petroleum.

The plaintiffs are entitled to their injunctive relief as prayed. Counsel may present draft orders in accordance with these rulings.

Witness our hands this the date of filing, at the Austin Division of this court.