THOMAS McCARTY and Others, Plaintiffs, *v.* PRUDENCE-BONDS CORPORATION, Defendant.*

Supreme Court, New York County, September 20, 1933.

* See, also, *Railroad Co-operative B. & L. Assn.* v. *Boston Building Estates, Inc.* (149 Misc. 349); *Sherwin* v. *Jonas* (Id. 481).

*Joseph Gans* [*Hiram S. Gans* of counsel], for the plaintiffs Mayer and Samuels.

*Louis S. Posner* [*Louis S. Posner* and *Harold S. Lynton* of counsel], for the defendant.

UNTERMYER, J. These are two motions, in actions previously consolidated by order of the court, in which Bertha Mayer is one of the plaintiffs and the Prudence-Bonds Corporation is the sole defendant. The action in which these motions are made was upon two bonds which matured on January 1, 1932, executed by the defendant and secured by mortgage on real property.

The plaintiff's motion is for summary judgment for the principal amount of the bonds with accrued interest. The defendant, by order to show cause, has made a cross-motion demanding that the action be dismissed and expressing its willingness to pay any interest due on the bonds and such costs as may be taxable. In so moving the defendant relies on sections 1077-b and 1077-e of the Civil Practice Act, which were enacted by chapter 793 of the Laws of 1933, known as the mortgage moratorium laws. The plaintiff disputes the defendant's right to avail itself of these laws upon the ground that they are repugnant to the Constitutions of the United States and the State of New York, principally in that, as it is claimed, they impair the obligation of the plaintiff's mortgage contract in violation of article 1, section 10, of the Constitution of the United States and in that they deprive her of property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and of article 1, section 6, of the Constitution of the State of New York.

In enacting the statute the Legislature has declared that " a serious public emergency, affecting and threatening the welfare, comfort and safety of the people of the state and resulting from the abnormal disruption in economic and financial processes, the abnormal credit and currency situation in the state and nation, the abnormal deflation of real property values and the curtailment of incomes by unemployment and other adverse conditions, exists." (§ 1.) That declaration, though not conclusive in determining the validity of the statute (*Shoemaker* v. *United States*, 147 U. S. 282), is in complete accord with facts of which the court must take judicial notice. The question now presented is whether in the light of those facts, which might almost be called history, the Legislature was helpless, even for a limited period, to protect the mortgagor of real property against foreclosure of the mortgage and against action on the bond, in the expectation that in the meantime business and finance, and the conditions of real property in

particular, might rectify themselves. If it was powerless to accomplish this, then the foreclosure of mortgages and the enforcement of the bonds secured thereby must be permitted to continue, regardless not only of the consequences to the mortgagor but regardless also of the disastrous consequences to the business of the nation resulting from the sacrifice of so much property at forced sale. Nor could the purpose of the Legislature have been secured merely by suspending foreclosure of mortgages. It was necessary also to suspend enforcement of bonds secured by mortgage, for otherwise the property would frequently be sold to satisfy a judgment recovered on the bond. It is to be noted, however, that the Legislature has required the payment of interest and taxes and that as to property not used for farming or dwelling purposes it imposed additional conditions. (§ 1077-c.)

I think the Constitution is not so limited in scope as to render impossible appropriate legislation to avert the danger which threatened the community. In examining the question I need not consider extensively all the contentions on which the plaintiff relies, for the question is one on which our courts of last resort must ultimately speak the final word. It is sufficient to say now that the statute may be sustained as constitutional under those decisions of the Supreme Court of the United States and of the Court of Appeals known as the " emergency rent cases.' (*Block* v. *Hirsh*, 256 U. S. 135; *Brown Co.* v. *Feldman*, Id. 170; *People ex rel. Durham Realty Corporation* v. *LaFetra*, 230 N. Y. 429.) In those cases the courts sustained statutes, enacted on account of a shortage in housing facilities, which allowed the tenant to remain in possession of premises after the expiration of the lease, upon payment of reasonable rent, notwithstanding an express covenant on his part to surrender possession at the expiration of the term. The right of the landlord to recover possession of his property from a tenant whose lease had expired and the contractual obligation of the tenant to surrender the premises at the end of the term were held to be subject to the police power of the State when circumstances had clothed the renting of dwellings with a public interest. That which is true of land, when there is a scarcity of shelter, is true of money in a critical period of financial disturbance. If under extreme conditions the owner of land may temporarily be deprived of the possession of his property, may not the Legislature temporarily deprive the lender of the right to maintain an action for the principal of his loan?

The plaintiff relies on many decisions of the Supreme Court of the United States which, in the absence of unusual circumstances, have held that the Legislature may not impair the obli-

gation of a contract by any alteration of its terms (*Effinger* v. *Kenney*, 115 U. S. 566; *Bradley* v. *Lightcap*, 195 id. 24), nor, indirectly, by refusing a remedy for the enforcement of the contract. (*McCracken* v. *Hayward*, 2 How. [U. S.] 608; *Barnitz* v. *Beverly*, 163 U. S. 118.) There is no disposition to impugn the authority of these decisions and of others which hold that contract rights are rights of property of which, under ordinary circumstances, a contracting party may not be deprived without due process of law. (*Producers Transportation Co.* v. *Railroad Commission*, 251 U. S. 228.) These decisions were concerned with legislation enacted in ordinary times when the rights of the parties and the public interests were not affected by unusual conditions. But that which is ordinarily the subject of private treaty and which ordinarily constitutes a strictly private right may, in moments of emergency, become of vital public interest justifying interference by the State. (*Wilson* v. *New*, 243 U. S. 332.) The emergency produces the necessity for legislation and the necessity justifies the exercise of the police power over property and contracts alike. (*Union Dry Goods Co.* v. *Georgia Public Service Commission*, 248 U. S. 372.)

I conclude, therefore, that the mortgage moratorium statute (Laws of 1933, chap. 793) is constitutional; that the plaintiff's motion for summary judgment must be denied, and the defendant's motion to dismiss the complaint must be granted upon compliance by the defendant with the provisions of section 1077-e by payment, before September 25, 1933, of accrued interest on the bonds and taxable costs.