

# The Attorney General of Texas

July 27, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Charles Herring
General Manager
Lower Colorado River Authority
P. O. Box 220
Austin, Texas 78767

Opinion No. H-1217

Re: Authority of LCRA to permit another entity to use part of pipeline and consequences of transaction.

Dear Mr. Herring:

You inform us that the Lower Colorado River Authority has received a request from Entex, Inc., for a tap on the natural gas pipeline owned by LCRA which runs to an LCRA electric generating plant. Entex wishes to use the pipeline to transport gas to schools in the Hays Consolidated School System and to a subdivision. You ask several questions about this proposed transaction.

You first ask whether LCRA has authority to engage in this transaction. The statute creating the LCRA grants it "all powers, rights, privileges and functions conferred by general law upon any district or districts created pursuant to Section 59 of Article 16 of the Constitution" except as expressly limited by the creating statute. Acts 1975, 64th Leg., ch. 74, § 2, at 180. It is expressly authorized "to develop and generate ... electric energy" and to acquire, maintain, use, and operate any property necessary or convenient to the exercise of its express powers. Id. § 2(b), (e). Thus, it is empowered to own and operate its pipeline as property necessary or convenient to the production of electricity.

Sections 51.121 through 51.194 of the Water Code grant numerous powers to all water control and improvement districts organized pursuant to article 16, section 59 of the Texas Constitution. See Attorney General Opinion H-1195 (1978). Section 51.137 provides as follows:

> The district may enter into a contract for the use by another of its water, power, facilities, or service, either inside or outside the district, except that a contract may not be made which impairs the ability of the district to serve lawful demands for service within the district.

In our opinion, this provision authorizes the transaction you inquire about, so long as the proposed contract will not impair LCRA's ability to serve its lawful customer demands.

You next ask whether LCRA would become a natural gas utility under the Public Utility Regulatory Act. Section 3(c) of the Public Utility Regulatory Act, article 1446c, V.T.C.S., defines "public utility" as follows:

> The term 'public utility' or 'utility', . . . includes any . . . river authority . . . now or hereafter owning or operating for compensation in this state equipment or facilities for:
>
> . . . .
>
> (3) transmitting or distributing combustible hydrocarbon natural or synthetic natural gas for sale or resale. . . .

Under the proposed contract, LCRA would receive compensation for owning facilities used for transmitting natural gas for sale. It does not matter that Entex, rather than LCRA, sells the gas; the determinative facts are that the gas is to be sold and that LCRA receives compensation. LCRA would therefore become a public utility subject to the jurisdiction of the Railroad Commission. V.T.C.S. art. 1446c, § 19(b).

You next ask whether the pipeline would become a common carrier. We dealt with the status of natural gas pipelines as common carriers in Attorney General Opinion H-830 (1976). We noted that no Texas statute expressly declares natural gas pipelines to be common carriers. Article 882, V.T.C.S., provides that the common law shall prescribe their status. We stated the common law test as follows:

> [A] natural gas pipeline or a gas utility is a common carrier if it holds itself out as available to transport gas to all who may desire its services. Otherwise, it is a private carrier.

Attorney General Opinion H-830 (1976); see also Producers Transportation Company v. Railroad Commission of California, 251 U.S. 228 (1920). Whether a particular pipeline meets this test is a question of fact.

You ask whether LCRA could reserve the right to terminate service should it need the pipeline to transport other fuel besides natural gas. The Public Utility Regulatory Act provides in part:

> The railroad commission shall have exclusive original juris- diction over the rates and services of gas utilities

distributing natural gas or synthetic natural gas in areas outside the limits of municipalities, and it shall also have exclusive original jurisdiction over the rates and services of pipelines transmitting, transporting, delivering, or selling natural gas or synthetic natural gas to gas utilities engaged in distributing such gas to the public.

V.T.C.S. art. 1446c, § 19(b). Section 35 of article 1446c authorizes the Railroad Commission to establish standards with respect to services furnished by the utilities it regulates. If LCRA becomes a public utility subject to Railroad Commission jurisdiction, it would be subject to these provisions, and termination of service provided under the proposed agreement would require Railroad Commission approval.

You finally ask whether the transaction could be construed as the use of public property for the benefit of a private company. Article 3, section 51 of the Texas Constitution prohibits the grant of public money to corporations. See also Tex. Const. art. 3, § 52. However, the lease of public property to a private entity does not violate this provision where the transaction serves a public purpose and where an adequate rental is paid. See Dodson v. Marshall, 118 S.W.2d 621 (Tex. Civ. App. — Waco 1938, writ dism'd); Attorney General Opinions H-445 (1974); H-109 (1973). In our opinion, the proposed transaction serves a public purpose. The Legislature has provided statutory authority for it, thereby indicating it is a proper undertaking for a conservation and reclamation district. It will facilitate the transportation of fuel to public schools and to consumers, an endeavor affected with a public interest even when engaged in by private entities. See V.T.C.S. art. 1446c, § 2; art. 6050, § 3. So long as LCRA receives adequate consideration for the use of its pipeline, the transaction will not grant an unconstitutional benefit to a private entity.

## SUMMARY

The Lower Colorado River Authority may contract to permit use of a portion of its natural gas pipeline by a private entity. Under the facts given, this transaction would cause LCRA to become a natural gas utility as defined by section 3(c)(3) of article 1446c, V.T.C.S., and subject to regulation by the Railroad Commission. As a natural gas utility, it could not terminate service without commission approval. Whether the pipeline would become a common carrier is a fact question. The transaction as described would not grant an unconstitutional benefit to a private entity.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn